**UNITED STATES of America**

v.

**Tidell LEWIS, Appellant.**

**No. 82–1560.**

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 8, 1982.

Decided March 4, 1983.

David E. Schreiber, Washington, D.C. (appointed by this Court), for appellant.

Katherine Winfree, Asst. U.S. Atty., with whom Stanley S. Harris, U.S. Atty., Michael W. Farrell and Bobara E. Liles, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before BORK and SCALIA, Circuit Judges and BAZELON, Senior Circuit Judge.

BORK, Circuit Judge:

On December 23, 1981, a jury acquitted appellant Tidell Lewis of possession of a prohibited weapon (a blackjack), D.C.Code Ann. § 22–3214(a) (1981), but convicted him of possession of an unregistered firearm (a sawed-off shotgun), 26 U.S.C. §§ 5861(d), 5871 (1976). Lewis appeals his conviction on two grounds. He contends that the district court erred in finding the government's evidence sufficient to withstand his motion for judgment of acquittal made at the close of the government's case. Lewis also contends that the district court erred in admitting evidence that he was arrested on an outstanding arrest warrant for assault. Because the assault charge was wholly unrelated to the charges on which he was tried and convicted, Lewis argues, the evidence had no probative value, was highly prejudicial, and concerned only the circumstances of his arrest, a subject he had not put in issue. Upon review of the proceedings below, we reject both of Lewis's arguments and therefore affirm his conviction.

To withstand a motion for judgment of acquittal on the charge of constructive possession of an illegal firearm, the government must offer sufficient evidence that the defendant was in a position or had the right to exercise dominion or control over the firearm. *United States v. Davis,* 562 F.2d 681, 684 (D.C.Cir.1977); *United States v. Reese,* 561 F.2d 894, 898 (D.C.Cir. 1977). It must also offer evidence sufficient to show that the possession was "knowing." *United States v. Pardo,* 636 F.2d 535, 548 (D.C.Cir.1980); *United States v. Whitfield,* 629 F.2d 136 (D.C.Cir.1980), cert. denied, 449 U.S. 1086, 101 S.Ct. 875, 66 L.Ed.2d 812 (1981). Only the government's evidence, and not the defendant's, may be considered in determining the sufficiency of the evidence when the motion for judgment of acquittal is made, as it was here, at the close of the government's case. *United States v. Watkins,* 519 F.2d 294 (D.C.Cir. 1975). That evidence, however, must be viewed "in the light most favorable to the Government giving full play to the right of the jury to determine credibility, weigh the evidence and draw justifiable inferences of fact." *United States v. Davis,* 562 F.2d at 683. "It is only when there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt that a motion for judgment of acquittal may be granted." *United States v. Reese,* 561 F.2d at 898.

The government's evidence in this case, though hardly overwhelming, was sufficient to withstand Lewis's motion for judgment of acquittal. The testimony

showed that Lewis was driving an automobile one morning when he was stopped by two police officers who noticed that no inspection sticker was displayed on the windshield of his car. (Lewis later testified that the officers told him that they had seen him ignore a caution light.) Lewis was alone in the car. Upon request, Lewis retrieved the registration papers from the glove compartment. The papers showed that the car was registered in the name of Dino Allen, who, according to the government's testimony, resided at the same address as Lewis. The police officers, after speaking by radio with the police dispatcher, placed Lewis under arrest. (The officers learned from the dispatcher that there was an outstanding arrest warrant against Lewis, but the court did not permit them to reveal this fact.) Shortly thereafter they noticed the sawed-off shotgun protruding onto the back floorboard from under the front seat. The gun was visible from a position outside the car next to the driver's door.

In these circumstances, a reasonable jury could find that Lewis, though not the actual owner of the car, knew of and had dominion and control over the shotgun. A jury could reasonably believe, absent credible evidence to the contrary, that it is highly unlikely that the operator and sole occupant of a car registered to a member of his household would be unaware that so incriminating an item as a sawed-off shotgun was in the car when the shotgun was visible from outside the driver's seat. The government's evidence, we conclude, was sufficient to support the conviction. *See, e.g., United States v. Whitfield,* 629 F.2d 136; *United States v. Reese,* 561 F.2d 894.

■ The second ground for reversal urged by Lewis concerns the admission into evidence of certain testimony given by Lewis himself when he took the stand in his own defense. Lewis argues that it was error for the trial judge to allow the government to elicit from him on cross-examination the fact that the police arrested him pursuant to an outstanding arrest warrant for assault. We agree with Lewis that this testimony was prejudicial and that it

was irrelevant to the question of constructive possession. The record shows, however, that the testimony was allowed in because Lewis insisted that, upon being pulled to the side of the road, he showed the police a valid inspection sticker. He thus created the impression, even if unintentionally, that his arrest was unjustified, an impression the prosecutor was entitled to negate.

The court did not permit the government to show in its case that Lewis had been arrested pursuant to a warrant. But when Lewis took the stand, his counsel posed a general question asking that Lewis tell the court and jury what happened at his arrest. In response, Lewis testified that the two police officers had stopped him and told him he had gone through a caution light. He continued:

> and then [one of them] asked me—he told me something about my inspection sticker, right, and then asked me for my driving license and my registration.
>
> I gave them that and then they went back to the [police] car and then asked me to come out to the car.

Dec. 22, 1981 Tr. 16 [hereinafter Tr.]. Counsel asked no more about the reasons for the arrest but brought out that Lewis was handcuffed in the police car and that the officers searched his car and found the shotgun and blackjack.

Arresting and handcuffing a man in these circumstances might seem, at the very least, like high-handed police behavior. Perhaps that is why the government attorney went into the circumstances in more detail. On cross-examination, Lewis first confirmed the testimony of the arresting officers about what he had said when they stopped him: he testified that when arrested he had a valid driver's license but did not have it with him and that the car registration was in the glove compartment. The cross-examination continued:

> Q: Was there an inspection sticker on the car?
>
> A: The inspection sticker was in the registration and the inspection sticker was good.

THE COURT: It was what?

THE WITNESS: The inspection sticker was good.

Tr. 31–32. Lewis testified that he gave the sticker to one of the police officers, Officer Shaffer, along with the registration. *Id.* Apparently, in order to show that Lewis had actually been arrested because of the outstanding warrant, government counsel inquired what Lewis and Officer Shaffer talked about. At a bench conference at once requested by defense counsel, the district judge ruled that government counsel must stay away from the topic of the warrant. Tr. 33–37.

In a later colloquy at the bench, the judge observed that evidence of the warrant had nothing to do with the crime except that it showed that the police had validly arrested Lewis. Defense counsel said that the record already provided ample basis for the arrest. The judge was concerned, however, that Lewis claimed to have had a valid sticker. Defense counsel said that the government could cross-examine on that. The judge told government counsel to ask Lewis whether he claimed he had a valid sticker. He also asked defense counsel whether he would argue the propriety of the arrest, and defense counsel said he would not. Government counsel then said: "But I still have this man testifying that he has a valid sticker." The court responded: "All right. Let's see what he says." Tr. 57.

Questioned further, Lewis insisted that his sticker was valid and added that his nephew, who had put the sticker on the car, "said he didn't know why they stopped [Lewis] because the inspection sticker was good." Tr. 60. It was then that government counsel, with the judge's approval, asked about the reasons the police had given for arresting Lewis and brought out the existence of the assault warrant. The judge immediately instructed the jury that the warrant had no relevance to Lewis's guilt or innocence on the weapons possession charge and merely showed the authority of the police to arrest him.

It was unfortunate from Lewis's viewpoint that evidence of the arrest warrant was placed before the jury, but the propriety of the behavior of the police seemed to be in question, and it was Lewis himself who stated that the inspection sticker was good, a statement he made in response to a question that merely asked if he had a sticker. Further examination on the point merely brought further insistence that the sticker was good and the statement that his nephew had said that, since the sticker was good, he did not know why the police stopped Lewis. At that point it was proper for the government to show that there was another reason for the arrest. Otherwise, the jury would have been left with the picture of a man who was arrested, handcuffed, and placed in a police cruiser, while the car he had been driving was searched, merely because he had run a caution light, he had left his license at home, and the inspection sticker of a car he did not even own was in the glove compartment rather than on the windshield. Some of the jurors might well have wondered if the police behavior was not so unreasonably harsh as to cast doubt on the charges. Considered in light of the judge's careful cautionary instruction, the challenged evidence, we conclude, need not have been excluded under Rule 403 of the Federal Rules of Evidence on the ground that "its probative value is substantially outweighed by the danger of unfair prejudice." Nor need it have been excluded under Rule 404(b), as the evidence came in for one of the "other purposes" mentioned in the rule.

This case is not at all like *United States v. James*, 555 F.2d 992 (D.C.Cir.1977). This court there held it error to place before the jury, in a trial on a charge of possession of narcotics with intent to distribute, evidence of the defendant's arrest in an unconnected narcotics raid sixteen days after the charged date of possession. The only probative value of the evidence of the subsequent arrest was the weak inference that a defendant so apprehended would be more likely to have had an intent to distribute sixteen days earlier. Prejudice was amply supplied by a police officer's testimony about the later arrest that contained dam-

**976**

aging double hearsay and was "freighted with guns, violent action and a wanted man." *Id.* at 1000. Compared with the challenged testimony in the present case, the testimony in *James* had little relevance to any issue that might properly have been on the minds of the jurors, and it was far more lurid and prejudicial. The testimony in *James*, moreover, was not accompanied by a cautionary instruction. *James* does not control this case.

*Affirmed.*