UNITED STATES of America

v.

Bernard FOSTER, Appellant.

No. 83-1792.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 27, 1984.

Decided Feb. 14, 1986.

J. Peter Byrne (Appointed by this Court), for appellant.

Kenneth W. Cowgill, Asst. U.S. Atty., of the Bar of the Supreme Court of the District of Columbia, pro hac vice, by special leave of the Court, with whom Joseph E. diGenova, U.S. Atty., Michael W. Farrell and Paul L. Knight, Asst. U.S. Attys. were on the brief, for appellee.

Before BORK and SCALIA, Circuit Judges, and THOMAS F. HOGAN,[1] United States District Judge for the District of Columbia.

THOMAS F. HOGAN, District Judge:

In a two count indictment filed on April 7, 1983, appellant was charged with possession of an unregistered firearm, in violation of 26 U.S.C. §§ 5861 & 5871, and possession of a firearm not identified by a serial number, in violation of 26 U.S.C. §§ 5842, 5861 & 5871. The theory of the government's case at trial was that, although the appellant was not in actual possession of the weapon, he was in constructive possession. At the conclusion of the government's case the appellant moved for judgment of acquittal. The trial court denied appellant's motion, and, after the presentation of the appellant's case, the jury convicted appellant on both counts.

Appellant argues that the government failed to introduce sufficient evidence from which the jury could have reasonably concluded that he was in possession of the gun, and that the district court should therefore have granted his motion for judg-

---

1. Sitting by designation pursuant to 28 U.S.C. § 292(a) (1976).

ment of acquittal. We agree, and accordingly reverse appellant's conviction.[2]

■■■■ To withstand a motion for judgment of acquittal on the charge of constructive possession of an illegal firearm, the government must offer sufficient evidence that the defendant had knowledge of the existence of the firearm, and that the defendant was in a position or had the right to exercise dominion and control over it. *E.g., United States v. Lewis,* 701 F.2d 972, 973 (D.C.Cir.1983); *United States v. Whitfield,* 629 F.2d 136, 143 (D.C.Cir.1980), *cert. denied,* 449 U.S. 1086, 101 S.Ct. 875, 66 L.Ed.2d 812 (1981). In reviewing a motion for judgment of acquittal that was made, as it was here, at the close of the government's case-in-chief, it is the law of this Circuit that only the government's evidence may be considered. *See Cephus v. United States,* 324 F.2d 893, 895–97 (D.C. Cir.1963) (dictum). *See also Lewis,* 701 F.2d at 973; *United States v. Pardo,* 636 F.2d 535, 547 (D.C.Cir.1980); *United States v. Watkins,* 519 F.2d 294, 297 (D.C.Cir. 1975); *United States v. Bethea,* 442 F.2d 790, 792 n. 4 (D.C.Cir.1971).[3] However, in doing so, the prosecution's evidence is to be viewed in the light most favorable to the government, drawing no distinction between direct and circumstantial evidence, *e.g., Watkins,* 519 F.2d at 297–98, and "giving full play to the right of the jury to determine credibility, weigh the evidence and draw justifiable inferences of fact." *United States v. Davis,* 562 F.2d 681, 683 (D.C.Cir.1977). Nevertheless, where the evidence viewed in the light most favorable to the prosecution is such that "a reasonable juror *must* have a reasonable doubt as to the existence of any of the essential elements of the crime," a motion for judgment of acquittal must be granted. *Bethea,* 442 F.2d at 792 (emphasis in original).

The government's case-in-chief consisted of the testimony of two officers of the Metropolitan Police Department (MPD) and an agent of the Treasury Department's Bureau of Alcohol, Tobacco and Firearms. Officer Wilson testified that he, along with several other MPD officers, entered the Argyle Variety Store on March 10, 1983 to execute a search warrant. Upon entering the store, Officer Wilson observed the appellant standing near a cash register behind a counter which faces the front door of the store. Other employees, as well as several customers, were also observed in the store at the time. The appellant was

---

**2.** The appellant also challenges the District Court's pretrial ruling, which permitted the prosecution to introduce evidence that showed the appellant was in possession of another unregistered weapon, a pistol. Although the appellant objected only to the proposed introduction of the unregistered nature of the pistol, and the prosecution never in fact introduced evidence that the pistol was unregistered, appellant nevertheless argues that he was prejudiced by the ruling because his own counsel, based on the court's ruling, mentioned in opening statements that the pistol was unregistered. We need not consider appellant's argument on this point in light of our reversal of appellant's conviction based on denial of his motion for judgment of acquittal.

**3.** Contrary to the *"Cephus* rule", every Circuit other than this one has adopted the "waiver doctrine" with respect to motions for judgment of acquittal. Under the waiver doctrine, a defendant who offers evidence in his own defense after the denial of a motion for judgment of acquittal made at the close of the government's case waives objection to the court's initial denial of the motion based on the sufficiency of the government's evidence alone. The motion may be renewed at the close of all of the evidence, but the sufficiency of the evidence will then be determined by examination of the entire record.

Because of this Circuit's solitary position, the full Court has reevaluated the rule of *Cephus* and its progeny in the context of this appeal. In an en banc opinion issued simultaneously with this opinion, the Court has abandoned the *Cephus* rule, and held, prospectively,

> that a criminal defendant who, after denial of a motion for judgment of acquittal at the close of the government's case-in-chief, proceeds with the presentation of his own case, waives his objection to the denial. The motion can of course be renewed later in the trial, but appellate review of denial of the later motion would take into account all evidence introduced to that point.

*United States v. Foster,* 783 F.2d 1082, 1085 (D.C.Cir.1986) (en banc). In light of the prospective application of the en banc decision, the *Cephus* rule still applies to Foster's appeal. *See Id.* at 1086 (non-waiver rule to be followed "in the present case and in other cases that came to trial before issuance of this opinion").

ordered away from the counter, and the ensuing search revealed a shotgun behind the counter on a shelf underneath the cash register. The officer testified further that the shotgun was approximately at the appellant's fingertips when they entered the store, and that the butt of the gun was visible when he knelt behind the counter, but that the rest of the gun was concealed by a towel. The appellant was then arrested, and a subsequent search of his person revealed a pistol in a holster on his ankle.

The agent of the Bureau of Alcohol, Tobacco and Firearms, Special Agent Stanford, testified that the shotgun was not registered and lacked a serial number. Stanford also testified that a test of tape which had been on the front of the shotgun revealed a fingerprint which did not match those of the appellant.

Finally, another MPD officer, Anna Mullens, who had also been present at the time of appellant's arrest, testified that she passed the Argyle Variety Store daily during her duties as a patrol officer. The officer testified further that she saw the appellant in the store at least once a week, and that he was generally working behind the counter where the shotgun was found when she saw him. At the close of the government's case, the shotgun and the pistol, as well as several other exhibits, were admitted into evidence without objection.

■ Viewing all of the evidence from the point of view most favorable to the government, we find nevertheless that the government did not provide sufficient evidence from which the jury could have reasonably concluded that appellant knew the gun was in the store and that he had the ability or right to exercise dominion and control over it. The only evidence offered by the government to link the appellant to the shotgun was testimony that the appellant was near the location of the shotgun just prior to its being discovered, that he was in that location for an unspecified amount of time once a week, and that he had another gun on his person. Numerous decisions of this Circuit have made clear that mere proximity or accessibility to contraband will not support a conclusion that an individual had knowing dominion and control over it. As the court stated in *Pardo,* 636 F.2d at 549:

> In short, there must be something more than mere presence at the scene of a criminal transaction. There must be some action, some word, or some conduct that links the individual to the [illegal items] and indicates that he had some stake in them, some power over them.

" 'Proximity, presence, or association is sufficient when accompanied ... [by] testimony connecting the defendant with the incriminating surrounding circumstances.' " *United States v. Staten,* 581 F.2d 878, 885 n. 60 (D.C.Cir.1978) (quoting *United States v. Ratcliffe,* 550 F.2d 431, 434 (9th Cir.1976)). Especially where, as here, contraband is discovered in a place occupied by more than one person, "the sufficiency of the evidence for jury consideration depends upon its capability plausibly to suggest the likelihood that in some discernible fashion the accused had a *substantial* voice vis-a-vis the [contraband]." *Staten,* 581 F.2d at 884 (emphasis added) (footnote omitted).

In *Whitfield,* 629 F.2d at 143, the court reversed the conviction of one co-defendant, Monroe, for possession of a loaded firearm where the only evidence with respect to him was that the weapon was found in a car under the front passenger seat on which he had been sitting. *Id.* The court noted in *Whitfield* that the government did not introduce evidence that Monroe made any motion to venture under the front seat that would indicate he was placing the gun there, or even that he inadvertently observed it. *Id.* Likewise, in the present case, the government's evidence indicated merely that the partially concealed shotgun was visible to someone kneeling behind the counter, without any testimony that the appellant was himself seen in that position or otherwise reaching under the counter. For this same reason, this case is distinguishable from *Lewis,* 701 F.2d 972. In *Lewis* the court affirmed a

conviction for illegal possession of a firearm against the sole occupant of an automobile registered to a member of his household. In upholding the trial court's denial of the defendant's motion for judgment of acquittal, the *Lewis* court emphasized that the gun was visible from a position outside of the car next to the driver's door. *Id.* at 974. Again, no such basis for inferring knowledge of the shotgun's presence exists in the present case.

In denying appellant's motion for judgment of acquittal, the district court indicated mistakenly that the government had introduced evidence that the appellant was the manager of the store. In actuality, however, no such evidence was introduced during the government's case-in-chief.[4] Although the appellant himself, as well as several defense witnesses, characterized the appellant as a manager of the store, that evidence may not properly be taken into consideration in reviewing the denial of appellant's motion for judgment of acquittal.[5]

The only evidence offered by the government which ties the appellant to the store was that he was an employee who worked there at least once a week and spent the majority of that time behind the counter where the shotgun was found. Without evidence presented in the government's case-in-chief that the appellant was the manager, or otherwise in a position of responsibility, this case must be distinguished from those in which the defendant's status with respect to the place where the contraband was found, along with his proximity and accessibility to the contraband, was significant in recognizing a permissible inference of knowing dominion and control. For example, in *Whitfield, supra,* the conviction of Monroe's co-defendant, Whitfield, who was the driver and owner of the car, was affirmed. The court stated that the jury could conclude that Whitfield, "as the owner and operator of the car, had control over its contents, par-

ticularly items within easy reach of the driver's seat." 629 F.2d at 143. *See also United States v. Smith,* 520 F.2d 74, 75–76 (D.C.Cir.1975) (evidence sufficient where accused was lessee and occupant of premises where narcotics found despite fact another individual also occupied premises). Although the special responsibility of a manager for a place of business may be equated with that of an owner or lessee of property, this Court does not find the same inference of knowing dominion and control to arise from mere employee status. Especially where, as here, there is a lack of additional evidence indicating that the employee was even aware of the shotgun's presence, we cannot find his employee status sufficient to give rise to the inference that he exercised a substantial voice in regard to the weapon.

The only remaining evidence proffered by the government was the fact that the appellant was in actual possession of another weapon, the pistol carried in the ankle holster. In asserting that this is sufficient probative evidence when coupled with the appellant's proximity to the shotgun, the government relies on cases in which convictions for possession of one quantity of narcotics were upheld based, in part, on the defendant's actual possession of other drugs or the presence of other narcotics or narcotics paraphernalia within this plain view. *E.g., Staten,* 581 F.2d at 885–86; *United States v. Herron,* 567 F.2d 510, 513 (D.C.Cir.1977); *United States v. Davis,* 562 F.2d 681, 685 (D.C.Cir.1977). In those cases, however, it was significant that the additional items found at the scene of the defendant's arrest were also contraband, or inextricably associated with contraband, creating a totality of circumstances from which it could be reasonably inferred that the defendant's presence was not innocent. *See, e.g., Staten,* 581 F.2d at 878 (jury could reasonably infer defendant's presence in apartment where contraband drugs

---

**4.** Counsel for both parties had indicated in their opening statements, however, that evidence would be introduced concerning the defendant's status as the manager of the store.

**5.** *See supra* note 3 and accompanying text.

and drug-distributing paraphernalia were openly strewn about was not merely passive). In the present case, however, although appellant's possession of the pistol was introduced in the government's case without objection, no evidence was admitted that possession of that weapon was unlawful.[6] The probative value, if any, of the appellant's mere possession of the pistol was so slight that this court cannot find it sufficient, even if considered in conjunction with appellant's proximity to the shotgun, to constitute incriminating circumstances supporting an inference of knowing dominion and control. *See Staten*, 581 F.2d at 885 n. 60 (citing *Ratcliffe*, 550 F.2d at 434).

Therefore, we find that the evidence introduced during the government's case-in-chief was insufficient to extinguish all reasonable doubt that a prudent juror should have entertained concerning the appellant's guilt. Accordingly, appellant's conviction is *reversed*.

---

**6.** Although the pistol was in fact unregistered, and the District Court ruled over the appellant's objection that its unregistered nature could be introduced, *see supra* note 2, that evidence was not presented by the government.