United States Court of Appeals

 FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued January 22, 1998 Decided February 27, 1998 

 No. 97-3047

 United States of America, 

 Appellee

 v.

 Ronald James Toms, a/k/a Block, 

 Appellant

 Appeal from the United States District Court 

 for the District of Columbia 

 (No. 93cr00367-01)

 Veronice A. Holt argued the cause and filed the brief for 
appellant.

 Elizabeth H. Danello, Assistant United States Attorney, 
argued the cause for appellee, with whom Mary Lou Leary, 
United States Attorney at the time the brief was filed, and 
John R. Fisher, Assistant United States Attorney, were on 
the brief.


 Before: Edwards, Chief Judge, Wald, and Rogers, Circuit 
Judges.

 Opinion for the Court filed by Circuit Judge Wald.

 Wald, Circuit Judge: Ronald James Toms ("Toms") was 
convicted of conspiracy to distribute and possess with intent 
to distribute 50 grams or more of cocaine base; possession of 
50 grams or more of cocaine base with intent to distribute; 
using or carrying a firearm during and in relation to a drug 
trafficking crime; and carrying a pistol without a license. 
Because of the amount of drugs the district court found to be 
involved in the conspiracy, Toms was assigned a base level of 
38 under the United States Sentencing Guidelines ("the 
Guidelines"). Toms now appeals his convictions and his 
sentence, contending that there was insufficient evidence to 
convict him of using or carrying a firearm, that the district 
court improperly admitted expert testimony as to his intent to 
distribute, and that the district court made an incorrect 
finding as to the amount of drugs involved in the conspiracy. 
Because we find these claims to be without merit, we affirm 
Toms's convictions and sentence.

 I. Background

 On November 9, 1993, a grand jury returned a thirteen-
count superseding indictment against Toms and two co-
defendants, Jimmy Thomas, Jr. ("Thomas"), and Keith Don-
nell Bradley ("Bradley"). All three men were charged with 
conspiracy to distribute and possess with intent to distribute 
50 grams or more of cocaine base from 1987 to October 1993 
in the Paradise and Mayfair housing complexes in northeast 
Washington, D.C. (21 U.S.C. ss 841(a)(1), (b)(1)(A)(iii), 846 
(1994)). Toms and Thomas were also charged with distribut-
ing cocaine base on two dates in 1993 (21 U.S.C. ss 841(a)(1), 
(b)(1)(A)(iii), (b)(1)(B)(iii) (1994); 18 U.S.C. s 2 (1994)), and 
Toms and Bradley were charged with possession of 50 grams 
or more of cocaine base with intent to distribute (18 U.S.C. 
s 2 (1994); 21 U.S.C. ss 841(a)(1), 841(b)(1)(A)(iii) (1994)); 
using or carrying a firearm during and in relation to a drug 
trafficking crime (18 U.S.C. ss 2, 924(c) (1994)); and carrying 


a pistol without a license (D.C. Code Ann. ss 22-3204(a), 105 
(1996)). Thomas and Bradley both pled guilty.1

 Among the evidence put forward by the government to 
prove the conspiracy was the testimony of Thomas, Toms's 
co-defendant. Thomas testified that Toms had supplied him 
with at least an ounce (28 grams) of cocaine base for distribu-
tion on "hundreds" of occasions from 1987 to 1993. Tran-
script ("Tr.") 1/13/95 at 123-24.

 The remaining charges against Toms stemmed from an 
incident on September 10, 1993. On that date, Elbert Kibler, 
a cooperating witness, saw Toms, Bradley, and a third man 
enter Thomas's apartment building in northeast Washington. 
Kibler called the Federal Bureau of Investigation ("FBI"), 
which had been investigating the conspiracy. FBI agents set 
up a surveillance of the area and watched as Toms and 
Bradley left the building, got into a Toyota Land Cruiser 
(with Toms in the driver's seat and Bradley in the passen-
ger's seat), and drove off. The agents followed the car, which 
they had initially intended to trail to its destination; when 
Toms began speeding and weaving in and out of traffic, the 
agents initiated a traffic stop. After removing Toms and 
Bradley from the car, the agents noticed a loaded, nine-
millimeter, semi-automatic pistol on Bradley's seat.

 A search of Toms incident to arrest yielded approximately 
$2,000 in cash, an identification card, and an electronic pager. 
The FBI later searched the Land Cruiser pursuant to war-
rant and retrieved a plastic bag containing 67.8 grams of 
cocaine base from under the rear seat and over $8,000 in cash 
from an air vent.

 Both Toms and Bradley testified that Toms had no knowl-
edge that the gun was in the car and that the gun belonged to 
Bradley. See Tr. 1/23/95 at 130, 157 (Toms); id. at 12, 83 
(Bradley). Toms also denied any involvement in drug dealing 

__________
 1 Thomas pled guilty to the indictment. Bradley pled guilty to 
the charge of possession with intent to distribute on September 10, 
1993; the remaining charges against him were dismissed pursuant 
to plea agreement.


or knowledge of the drugs found in the Land Cruiser. See id. 
at 101, 130. He claimed that the money found in the air vent 
of the car was to be used to cover the costs of recording a 
compact disc and was in the air vent for safekeeping. See id. 
at 131, 150. The jury subsequently convicted Toms of the 
conspiracy and the three counts related to the September 
10th incident. Toms's motion for a new trial was denied.2

 The presentence report assigned to Toms a base offense 
level of 38 under the Guidelines based on Thomas's testimony 
that he had received at least 28 grams of cocaine base from 
Toms on "hundreds" of occasions. See Tr. 1/13/95 at 123-24; 
U.S. Sentencing Guidelines Manual [hereinafter "U.S.S.G."] 
s 2D1.1(c)(1) (1997). On April 7, 1995, Toms moved for a 
hearing, seeking to question Thomas and Bradley and gain 
access to their presentence reports and alleging that Thom-
as's testimony was unreliable. The district court denied 
Toms's motion on March 4, 1997, crediting Thomas's testimo-
ny and concluding that even taken at its most conservative 
(28 grams on each of one hundred occasions), Thomas's 
testimony supported a finding that Toms had distributed 2.8 
kilograms of cocaine base, resulting in a base offense level of 
38. The district court also adopted the report's recommenda-
tion that Toms's base offense level be enhanced by four levels 
for his role in the conspiracy, see U.S.S.G. s 3B1.1(a), and by 
two levels for obstruction of justice, see U.S.S.G. s 3C1.1, 
yielding a total offense level of 44.3 Because Toms had 
reached the Guidelines' sentencing cap of level 43, see 
U.S.S.G. Ch. 5, Pt. A, intro. comment (offense level greater 
than 43 to be treated as offense level of 43), he was sentenced 
to concurrent terms of life imprisonment for the conspiracy 
and possession convictions, to be followed by concurrent, five-
year terms of supervised release. Toms also received a 
consecutive five-year term for using or carrying a firearm, to 

__________
 2 Toms's motion to vacate his convictions pursuant to 28 U.S.C. 
s 2255 (1994) is still pending in the district court.

 3 Toms does not challenge these two enhancements on appeal.


be followed by three years of concurrent supervised release, 
and a concurrent, one-year term for carrying a pistol without 
a license.

 Toms now appeals his convictions, contending that there 
was insufficient evidence to prove that he had knowledge of 
the pistol found in the Land Cruiser and that the district 
court improperly admitted expert testimony as to his intent 
and knowledge. He also challenges his sentence, renewing 
his argument that Thomas's testimony was an insufficient and 
unreliable basis for the district court's conclusion as to the 
amount of drugs involved in the conspiracy.

 II. Analysis

 A.The Weapon Convictions

 Toms raises two challenges to his convictions arising from 
the pistol found in the Land Cruiser. We agree with his 
contention that a portion of the jury instructions was given in 
error, but because we find this error harmless and his second 
challenge meritless, we reject both challenges.

 Toms's first challenge is to the jury instruction given on the 
section 924(c) charge,4 which included the following:

 The essential elements of the offense of use and carry-
 ing of a firearm during and in relation to a drug traffick-
 ing offense, each of which the government must prove 
 beyond a reasonable doubt are:

 1. That the defendant used or carried a firearm;

 2. That the defendant did so knowingly and intentional-
 ly; and

 3. That the defendant did so during and in relation to a 
 drug trafficking crime.

 You're instructed that the word "use" can mean any 
 use, such as the maintenance of a firearm for security or 
 protection purposes.

__________
 4 Section 924(c) prohibits the use or carrying of a firearm "during 
and in relation to any crime of violence or drug trafficking crime." 
18 U.S.C. s 924(c)(1).


 The government need not show that the defendant 
 actively employed the firearm or that the firearm was 
 fired. It is sufficient to show the defendant actually or 
 constructively possess[ed] a firearm in order to prove 
 that he used it.

 You're instructed that the word "carry" means to bear 
 on or about one's person. A firearm is carried on or 
 about one's person if it is located in such proximity to the 
 person as to be convenient of access or within reach....

Tr. 1/24/95 at 128 (emphases added). As the government 
concedes, Bailey v. United States, 116 S. Ct. 501 (1995), which 
the Supreme Court decided after Toms's conviction, renders 
the district court's instruction on "use" error. See id. at 505 
(conviction for "use" of a firearm under section 924(c) "re-
quires evidence sufficient to show an active employment of 
the firearm by the defendant, a use that makes the firearm an 
operative factor in relation to the predicate offense").

 Toms, unremarkably, did not object to this instruction, as it 
was consistent at the time with the prevailing law in this 
circuit. See, e.g., United States v. Bailey, 36 F.3d 106 (D.C. 
Cir. 1994), rev'd, 116 S. Ct. 501 (1995). In United States v. 
Smart, 98 F.3d 1379 (D.C. Cir. 1996), cert. denied, 117 S. Ct. 
1271 (1997), under similar circumstances, we noted that we 
would, under the supervening-decision doctrine,5 apply Bailey 
retroactively "to vacate any prior conviction in which such an 
instruction was given where it might have caused the jury to 
conclude that the defendant's awareness of and proximity to a 
gun nearby in a drug transaction constituted a forbidden 'use' 
of the gun"--in other words, if the error could not be said to 
be harmless. Smart, 98 F.3d at 1393.6 The evidence intro-

__________
 5 See, e.g., United States v. Washington, 12 F.3d 1128, 1139 (D.C. 
Cir. 1994) (court will consider issue not raised at trial "where a 
supervening decision has changed the law in appellant's favor and 
the law was so well-settled at the time of trial that any attempt to 
challenge it would have appeared pointless").

 6 The government cites Johnson v. United States, 117 S. Ct. 1544 
(1997), for the proposition that where a defendant fails to object to a 
jury instruction later rendered erroneous by a supervening decision, 


duced at trial was that the gun was found in the seat where 
Bradley had been sitting after he was removed from the car, 
a decidedly nonactive employment. Thus, if Toms's section 
924(c) conviction rested wholly on the jury's conclusion that 
he "used" a firearm during the drug trafficking incident, that 
conviction would have to be vacated.

 Nevertheless, as we noted in Smart, any error in the "use" 
instruction would be harmless if the jury necessarily found 
that Toms "carried" the firearm within the meaning of section 
924(c).7 Smart, 98 F.3d at 1393. The "necessarily" is crucial, 
for "a verdict [is required] to be set aside in cases where the 
verdict is supportable on one ground, but not on another, and 
it is impossible to tell which ground the jury selected." Yates 
v. United States, 354 U.S. 298, 312 (1957), overruled on other 
grounds by Burks v. United States, 437 U.S. 1 (1978); see 
also United States v. Washington, 106 F.3d 983, 1013 (D.C. 
Cir.), cert. denied, 118 S. Ct. 446 (1997). In Washington, for 
example, we upheld the convictions of the defendant police 
officers under section 924(c) because the only evidence in 
support of their convictions showed that the officers were 
wearing service pistols on their persons during the drug 
trafficking incidents; as a result, the jury could not have 
found that they "used" the pistols without also finding that 
they "carried" the weapons. Toms now argues that the jury 
could not have reached a similar conclusion in his case.

 We can easily reject this contention. As in Smart, the jury 
also convicted Toms of carrying a pistol without a license in 
violation of section 22-3204(a) of the D.C. Code.8 The jury 

__________
the instruction is reviewed for plain error rather than for harmless 
error. The fact that the instruction given in this case survives even 
a harmless error analysis makes consideration of this contention 
unnecessary.

 7 The indictment charged Toms with both the use and carrying of 
a firearm during the drug trafficking offense on September 10, 
1993, and so a valid conviction could have been obtained under 
section 924(c) if the jury concluded that Toms had carried the 
firearm during the offense.

 8 Section 22-3204(a) provides, in pertinent part:


was instructed that in order to obtain a conviction on this 
charge, the government had to prove, inter alia, (1) that 
Toms carried a pistol openly or concealed on or about his 
person; and (2) that he carried the pistol knowingly and 
intentionally. See Tr. 1/24/95 at 130; see also Butler v. 
United States, 614 A.2d 875, 885 (D.C. 1992). Under the 
prevailing law of this circuit and of the District, "carry" is 
interpreted identically for both section 924(c) and section 
22-3204(a): the weapon must be convenient of access and 
within reach. See, e.g., United States v. Anderson, 881 F.2d 
1128, 1141 (D.C. Cir. 1989); Henderson v. United States, 687 
A.2d 918, 920-21 & n.6 (D.C. 1996); see also Tr. 1/24/95 at 128 
(jury instruction). Thus, in order to find that Toms "carried" 
the gun under section 22-3204(a), the jury had to credit the 
officers' testimony regarding the location of the gun--on the 
passenger's seat of the car Toms was driving--and conclude 
that Toms was aware of the gun's presence. These are the 
same findings the jury would have had to make in order to 
find that Toms "carried" the gun for purposes of section 
924(c). Thus, by returning a guilty verdict on the section 
22-3204(a) charge, the jury necessarily concluded that Toms 
also carried the gun under section 924(c). The district court's 
instruction on "use" was harmless error.

 Notwithstanding this conclusion, however, Toms argues 
that he was wrongly convicted of both of the weapon charges 
because there was insufficient evidence to support a finding 
that he had the requisite knowledge that the gun was in the 
car.9 As the government notes, trial counsel did move for a 

__________
 No person shall carry within the District of Columbia either 
 openly or concealed on or about their person, a pistol, without a 
 license issued pursuant to District of Columbia law, or any 
 deadly or dangerous weapon capable of being so concealed.

D.C. Code Ann. s 22-3204(a).

 9 Both the section 924(c) charge and the section 22-3204(a) charge 
require proof that the defendant possessed the weapon knowingly 
and intentionally. See, e.g., United States v. Powell, 929 F.2d 724, 
727 (D.C. Cir. 1991); Butler, 614 A.2d at 885. Toms does not 
challenge the sufficiency of the evidence on the remaining elements 
of either charge (i.e., that the weapon was within his reach, that his 


judgment of acquittal on this basis as to "the gun charge" at 
the close of the government's evidence,10 but he failed to 
renew this motion at the close of all evidence. As a result, 
Toms's challenge would normally be reviewed for plain error. 
See, e.g., United States v. White, 1 F.3d 13, 17 (D.C. Cir. 
1993). However, Toms has claimed that this failure constitut-
ed ineffective assistance of counsel, which, as the government 
concedes, requires that his challenge be analyzed under the 
two-part test of Strickland v. Washington, 466 U.S. 668 
(1984). Under that test, Toms must show both (1) that trial 
counsel's performance was deficient--that counsel's represen-
tation "fell below an objective standard of reasonableness"--
and (2) that the deficient performance prejudiced the client--
"that there is a reasonable probability that, but for counsel's 
unprofessional errors, the result of the proceeding would have 
been different." Id. at 687-88, 694. Because ineffective 
assistance claims typically require an evidentiary hearing, we 
"normally do not resolve them on direct appeal, instead 
remanding to the district court." United States v. Gaviria, 
116 F.3d 1498, 1512 (D.C. Cir. 1997), cert. denied, 118 S. Ct. 
865 (1998). However, this tendency to remand has two 

__________
possession was "during and in relation to a drug trafficking crime," 
that the pistol was operable, and that he was not licensed to carry a 
pistol in the District of Columbia), and, in any event, there was 
ample evidence that these elements were satisfied. See, e.g., Unit-
ed States v. Eyer, 113 F.3d 470, 476 (3d Cir. 1997) (gun within reach 
inside passenger compartment of car satisfies "carry" element of 
section 924(c)); United States v. Range, 94 F.3d 614, 617 (11th Cir. 
1996) (same); Henderson, 687 A.2d at 921 n.6 (same with regard to 
section 22-3204(a)).

 10 "As to the gun charge, I think there is insufficient evidence that 
there be [sic] joint possession of the weapon. So I think there's 
been insufficient evidence on that. The government's entire theory 
in this case, which goes beyond what the actual evidence is of Mr. 
Bradley sitting on the weapon, is that that's evidence that he's the 
enforcer, and that the gun would not be in the possession, dominion 
and control of the defendant. It's not even consistent with their 
theory of the case. So I move for acquittal on that." The motion 
was denied. Tr. 1/20/95 at 153-54.


exceptions: "when the trial record alone conclusively shows 
that the defendant is entitled to no relief and when the record 
conclusively shows the contrary." Id. (internal quotes omit-
ted). Thus, we need not decide whether Toms's trial counsel 
was deficient if, upon reviewing the record, we can conclude 
that there is no reasonable probability that Toms would have 
prevailed on a motion for judgment of acquittal even if one 
had been made--in other words, we arrive at Toms's insuffi-
cient evidence argument by an alternate route. We thus 
review "the evidence de novo, in [the] light most favorable to 
the Government, in order to determine whether a rational 
trier of fact could have found the essential elements of the 
crime beyond a reasonable doubt." United States v. Moore, 
97 F.3d 561, 563-64 (D.C. Cir. 1996) (internal quotes and 
citations omitted). Our review is deferential and draws no 
distinction between direct and circumstantial evidence. Unit-
ed States v. Moore, 104 F.3d 377, 381 (D.C. Cir. 1997); 
United States v. Harrison, 931 F.2d 65, 71 (D.C. Cir. 1991).

 Because the gun was not found on Toms's person, the 
government's case necessarily rested on a theory of construc-
tive possession. In order for the government to prove that 
Toms constructively possessed the gun discovered in the 
Land Cruiser, it needed to establish that he "knowingly [was] 
in a position to exercise dominion and control over the object 
possessed, either personally or through others." Harrison, 
931 F.2d at 71; see also Brown v. United States, 546 A.2d 
390, 394 (D.C. 1988). The government offers two theories as 
to Toms's knowledge. First, it contends that the jury's 
return of a verdict of guilty as to the section 924(c) charge 
must necessarily be interpreted to mean that the jury dis-
credited Toms's testimony that he knew nothing of the gun 
and instead found that he knowingly possessed it. Second, 
the government argues that the jury could infer knowledge 
by looking to the evidence that Toms and Bradley were 
involved in an ongoing drug-selling operation and concluding 
that Toms therefore controlled the gun either directly or 
through Bradley. The first of these arguments is not a 
sufficient basis upon which to affirm Toms's conviction. In 
United States v. Zeigler, 994 F.2d 845 (D.C. Cir. 1993), we 


declined to allow the jury's discrediting of the defendant's 
testimony to make up for a shortfall in the sufficiency of the 
government's evidence. "There is no principled way of decid-
ing," we noted, "when the government's proof, less than 
enough to sustain the conviction, is nevertheless enough to 
allow adding negative inferences from the defendant's testi-
mony to fill the gaps." Id. at 850. To be sure, the jury is 
free to discredit any witness before it on the stand and even 
to believe the exact opposite of the matter to which the 
witness has testified. Our review as an appellate court, 
however, would be frustrated if we were to allow such dis-
crediting to constitute an essential part of the government's 
case--we cannot tell, from the lifeless words on the printed 
page of the transcript, whether the testimony memorialized 
therein is worthy of belief. The government therefore cannot 
rely on the jury's discrediting of Toms's testimony to prove 
an element of its case.

 The government's second argument, however, ultimately 
proves more compelling, although viewed as an argument for 
co-conspirator liability--that because Toms was engaged in a 
drug distribution conspiracy, he is responsible for any acts 
committed by his co-conspirators in furtherance of the con-
spiracy, see, e.g., Pinkerton v. United States, 328 U.S. 640, 
646-48 (1946)--it fails. As the indictment makes clear, and 
as the government concedes, the gun charges stemmed only 
from the September 10th incident and were not predicated on 
the conspiracy. In order for it to obtain a conviction on the 
gun charges, then, the government had to present evidence 
that could lead a jury to conclude that Toms himself was 
aware of the presence of the gun in the car, not simply that 
he was involved in a conspiracy with the person under whom 
the gun was found. Cf. In re Sealed Case (Sentencing 
Guidelines' "Safety Valve"), 105 F.3d 1460, 1464-65 (D.C. Cir. 
1997) ("Linking participation in an ongoing drug trafficking 
enterprise to constructive possession of a gun requires an 
additional inferential step, one that we think should not be 
made ... without some additional evidence supporting that 
step.").


 As the second prong of the government's argument sug-
gests, however, there was sufficient evidence of Toms's drug-
selling activities such that the jury could have concluded that 
Toms was aware of the gun's presence in the Land Cruiser on 
September 10th and thus constructively possessed the gun.11 
As we have noted elsewhere, although "mere proximity" to a 
gun is insufficient to establish constructive possession, evi-
dence of an additional factor establishing that the defendant 
was in a position to exercise dominion or control over the 
gun--" 'including connection with a gun [or] proof of mo-
tive' "--coupled with proximity may be sufficient. Moore, 104 
F.3d at 381 (quoting United States v. Gibbs, 904 F.2d 52, 56 
(D.C. Cir. 1990)); see also United States v. Jenkins, 981 F.2d 
1281, 1283 (D.C. Cir. 1992). Where, as here, the gun is found 
in a place occupied by more than one person, the sufficiency 
of the evidence analysis depends on whether the evidence 
plausibly suggests " 'the likelihood that in some discernible 
fashion the accused had a substantial voice vis--vis the 
[gun].' " United States v. Foster, 783 F.2d 1087, 1089 (D.C. 
Cir. 1986) (quoting United States v. Staten, 581 F.2d 878, 884 
(D.C. Cir. 1978)) (emphasis in Foster).

 The government introduced evidence both as to connection 
and as to motive to show that Toms, because of his drug 
activities, was accustomed to keeping a gun nearby for pro-
tection. Thomas, for example, one of Toms's co-conspirators, 
testified that he had seen Toms carrying a gun "[a] lot of 
times" and that Toms often kept a gun hidden in his car. Tr. 
1/13/95 at 139. In addition, the wealth of testimony that 
connected Toms to drug dealing--credited by the jury in its 
conviction of Toms for the conspiracy as well as for the drugs 
recovered from the Land Cruiser--provided a motive for 
Toms to have a gun close at hand, namely, protection of the 

__________
 11 Toms did not challenge the admissibility of this evidence during 
the trial, nor does he do so on appeal. In any event, although Rule 
404(b) of the Federal Rules of Evidence prohibits the admission of 
"other crimes, wrongs, or acts ... to prove the character of a 
person in order to show action in conformity therewith," the rule 
permits such evidence to prove, among other things, intent, knowl-
edge, and motive. Toms put his knowledge at issue in the case 
when he testified that he did not know that the pistol was in the car.


drugs and money in the car.12 Admittedly, the government's 
case was not as overwhelming as it would have been had the 
gun been located under Toms's seat or on his person rather 
than on Bradley's seat; we have noted that "[o]ther factors 
being equal, it is less likely that one exercises a right of 
control over an item physically held by another than over an 
item in some common area readily accessible to all present." 
Harrison, 931 F.2d at 72. Nonetheless, given the evidence 
presented, the jury was entitled to conclude that despite the 
fact that the gun was found where Bradley had been sitting, 
it was there for Toms's benefit--in other words, that Toms 
knew of the gun's presence and intended to use it, or direct 
that it be used, should it become necessary to do so. We 
reached much the same conclusion in Harrison, which also 
involved the discovery of guns and drugs in a vehicle stopped 
by the police. Although the only guns recovered in that case 
were found on the persons of the other occupants of the 
vehicle, we held that because the jury found that the defen-
dant intended to distribute the drugs recovered from the 
vehicle, the jury could reasonably have concluded that if it 
became necessary, the defendant would either "use one of his 
confederates' guns to shoot back, or else instruct one of them 
to do so"--in other words, the jury could have inferred that 
the defendant had " 'some appreciable ability to guide the 
destiny' of the weapons." Id. at 73 (quoting Staten, 581 F.2d 
at 883). We see no reason to reach a different conclusion in 
this case.

 Because the record is clear on the sufficiency of the evi-
dence to support the weapon charges, we need not remand 
for further factfinding on the adequacy of trial counsel. 

__________
 12 To be clear on this point: This evidence was not introduced to 
show that because Toms had carried a gun on other occasions or 
because he had dealt drugs, he was the type of person who would 
carry a gun on the date in question; admission for this purpose is 
specifically forbidden by the first part of Rule 404(b) of the Federal 
Rules of Evidence. Rather, the evidence was introduced to show 
intent, motive, knowledge and/or absence of mistake with respect to 
the gun found in the Land Cruiser. Admission for these purposes 
is permitted under the second part of Rule 404(b).


Considering the evidence presented at trial in the light most 
favorable to the government, we conclude that there was 
sufficient--although not overwhelming--evidence to convict 
Toms on the section 924(c) and section 22-3204(a) charges.

B. Expert Opinion Testimony

 As part of its case-in-chief, the government called Johnny 
St. Valentine Brown, an officer with the Metropolitan Police 
Department, as an expert in the distribution schemes of illicit 
drugs.13 The prosecutor then posed the following hypotheti-
cal, the facts of which mirrored the September 10th incident:

 Now, assume a person is driving in a vehicle, and is 
 pulled over for driving recklessly, Detective Brown, and 
 when the passenger in that vehicle is pulled out, he is 
 found to be sitting on a gun. Now, assume later 67 
 grams of crack are found under the rear seat, over $8,000 
 is found in the air conditioning vents, and the driver of 
 the vehicle has $2,000 on his person. What would be the 
 relationship there between, let's say, the gun and the 
 drugs and the roles of these various individuals?

Tr. 1/20/95 at 99. At this point, defense counsel objected, 
stating, "I note an objection to ultimate conclusion; don't 
object to what it could be." His objection was overruled. Id. 
Brown then responded:

 In my opinion, the individual sitting on the gun, that 
 individual in that particular instance is the enforcer. 
 That is the reason he's sitting on that gun. The individu-
 al operating the vehicle in that situation would be the 
 supplier of those substances. This individual is this 
 supplier's enforcer. So again, guns and drugs go hand in 
 hand, and of [course], the way in which drugs are trans-
 ported is by various modes of transportation such as 
 cars, vans and the like. So to find drugs in the vehicle, 

__________
 13 As we have often noted, the modus operandi of drug dealers is 
a suitable topic for expert testimony because it is "not within the 
common knowledge of the average juror." United States v. Boney, 
977 F.2d 624, 628 (D.C. Cir. 1992).


 an individual possessing a weapon, and monies, that's 
 pretty much standard par for the course.

Id. Toms now argues that the district court improperly 
admitted the testimony of Officer Brown under Rule 704(b) of 
the Federal Rules of Evidence. Rule 704(b) provides:

 No expert witness testifying with respect to the mental 
 state or condition of a defendant in a criminal case may 
 state an opinion or inference as to whether the defendant 
 did or did not have the mental state or condition consti-
 tuting an element of the crime charged or of a defense 
 thereto. Such ultimate issues are matters for the trier of 
 fact alone.

Toms contends that because the hypothetical posed to Brown 
mirrored the facts of the September 10th incident, Brown's 
testimony that the driver was the "supplier" and that the 
passenger was the "enforcer" constituted impermissible testi-
mony as to Toms's mental state--specifically, his intent to 
distribute the drugs found in the car and his knowledge as to 
the presence of the gun. The government, however, argues 
that Brown testified only to the modus operandi of a typical 
drug operation and the roles of the individuals involved in 
such an operation and therefore did not encroach on the 
realm of impermissible testimony adverted to in Rule 704(b).

 We should note, to begin, that we have several times 
disapproved of the method of questioning used by the govern-
ment in this case. Although in earlier cases we held that an 
expert is permitted to state "that certain conduct fits a 
specific role in a criminal enterprise--even though the con-
duct described exactly parallels conduct that other evidence 
explicitly links to a defendant," United States v. Mitchell, 996 
F.2d 419, 422 (D.C. Cir. 1993), we have more recently, 
beginning in 1995, recognized that mirroring hypotheticals 
often present " 'a line that expert witnesses may not cross.' " 
United States v. Boyd, 55 F.3d 667, 671 (D.C. Cir. 1995) 
(quoting Mitchell, 996 F.2d at 422). The danger, as we noted 
in Boyd, is that even when an expert does not explicitly 
identify the defendant in her answer, her testimony in re-
sponse to such a hypothetical will suggest that the expert 


possesses knowledge of the defendant's mental state, which 
may be used by a jury "to cure the ambiguity that they face." 
Id. at 672. Because it is the job of the jury to decide whether 
a defendant has a particular mental state, such mirroring 
hypotheticals often violate Rule 704(b): Although framed as a 
hypothetical, they call for the expert essentially to testify as 
to the mental state of the defendant.

 We review a trial judge's admission of evidence for abuse of 
discretion. Smart, 98 F.3d at 1386. Moreover, as we noted 
in Smart, we consider

 two key elements in deciding whether expert testimony 
 violates Rule 704(b): (1) the language used by the ques-
 tioner and/or the expert, including use of the actual word 
 "intent" and (2) whether the context of the testimony 
 makes clear to the jury that the opinion is based on 
 knowledge of general criminal practices, rather than 
 some special knowledge of the defendant's mental pro-
 cesses.

Id. at 1388 (internal quotes omitted). Although, as in so 
many cases involving expert witnesses on drug distribution, 
the question is close, we conclude that the admission of 
Officer Brown's testimony here did not violate Rule 704(b). 
To begin with, Toms's trial took place in January 1995; at 
that time, we had not yet issued our opinion in Boyd, which 
clearly held that such mirroring hypotheticals were impermis-
sible.14 Second, this case can be distinguished from recent 
cases involving the same issue in that neither the question 
posed to Officer Brown nor his answer referred explicitly to 
intent. By contrast, in most of our previous cases warning 
about the danger of mirroring hypotheticals, the question 
concluding each hypothetical was clearly intended to elicit 

__________
 14 We trust that we can rely on government counsel's representa-
tion that the end of the line is in sight as far as appellate review of 
this litigation strategy is concerned. Boyd was decided four months 
after the trial in this case, and government counsel assured us at 
oral argument that the government no longer asks mirroring hypo-
theticals of its expert witnesses in drug cases.


testimony as to the defendant's intent. In Boyd, for example, 
the mirroring hypothetical was followed by a question asking 
the expert whether, in his opinion, "that person's possession 
of the mixture or substance [is] possession for personal use or 
is it consistent with possession with intent to distribute?" 
Boyd, 55 F.3d at 670. Similarly, in Mitchell, both the prose-
cutor's question and the expert's response contained the word 
"intent." See Mitchell, 996 F.2d at 422.

 It is not necessary, of course, that the precise word "intent" 
be used for a Rule 704(b) violation to occur. We held in 
Smart, for example, that an expert's testimony, in response to 
a mirroring hypothetical, that the individual "met the ele-
ments" was impermissible because the legal connotations of 
the word "elements" could easily have led the jury to inter-
pret the word to refer to statutory elements--in other words, 
that the individual possessed the necessary intent to distrib-
ute. Smart, 98 F.3d at 1387-89. In this case, however, 
neither the question asked nor the answer given crossed 
Smart's line of impermissibility. The government asked 
Brown for his opinion as to the "relationship" between the 
people mentioned in the hypothetical; Brown's answer--in 
which he identified the driver as the "supplier" and the 
passenger as the "enforcer"--was responsive to this question 
without purporting to describe Toms's intent. Indeed, in the 
remainder of his answer, Brown testified that guns, drugs, 
and large amounts of money were typically found in tandem. 
In context, then, his testimony as to the roles of the people in 
the car is more properly viewed as testimony on the elements 
of a drug operation, based on "knowledge of general criminal 
practices," rather than an opinion on the intent of the individ-
uals described. We thus hold that Officer Brown's testimony 
did not violate Rule 704(b) and affirm Toms's convictions.

C. Toms's Sentence

 Finally, Toms argues that it was error for the district court 
to sentence him based on the testimony of Thomas who, Toms 
contends, was an unreliable witness. As a result of this 
error, Toms argues, he was ultimately sentenced for more 


than ten times the amount of drugs alleged in the indictment 
and more than forty times the amount for which he was 
convicted as a result of the September 10th traffic stop.

 Our review of the district court's sentence is guided largely 
by our decision in United States v. Lam Kwong-Wah, 966 
F.2d 682 (D.C. Cir. 1992). In Lam, we noted that in United 
States v. Patrick, 959 F.2d 991 (D.C. Cir. 1992), this circuit 
had joined the majority of other circuits in holding that 
because the quantity of drugs involved in a conspiracy or 
distribution charge "is not a basic element of the offense," its 
determination is relevant only to the issue of punishment and 
thus is "a sentencing factor to be determined by the judge." 
Lam, 966 F.2d at 685 (citing cases). Toms does not dispute 
this conclusion but argues that because his case constituted 
an "extraordinary upward departure," Lam requires that the 
judge's factual determinations be supported by clear and 
convincing evidence, rather than by simply a preponderance 
of the evidence.

 While we acknowledged in Lam the possibility that "ex-
traordinary circumstances" might call for the application of a 
higher standard, we concluded that no such circumstances 
were present in Lam's case. Lam, 966 F.2d at 688. Lam 
had been convicted of conspiracy to distribute heroin; the 
district court, concluding that Lam "knew or reasonably could 
have foreseen" that 3.4 kilograms were slated for the first 
delivery, id. at 685, based Lam's sentence on that amount. In 
rejecting Lam's claim that a higher standard of proof was 
required in his case due to the impact of that finding on his 
sentence, we distinguished United States v. Kikumura, 918 
F.2d 1084 (3d Cir. 1990), in which the Third Circuit required 
a heightened burden of proof, by noting that while Kikumu-
ra's sentence was based in part on conduct for which he was 
not charged (namely, terrorist acts), Lam's sentence "was 
determined solely on the basis of conduct of which he was 
actually convicted"--the conspiracy to distribute heroin. 
Lam, 966 F.2d at 687-88. We also noted that Lam's counsel 
had conceded that Lam had scienter as to enough heroin to 
support a base offense level of 28; the 3.4 kilogram quantity 
assigned him a base offense level of 34. "While a six-level 


increase [was] not insignificant," we noted, it did not present 
the "enormous" twenty-two level disparity involved in Kiku-
mura that warranted the satisfaction of a higher burden of 
proof. Id. at 688.

 The circumstances of Toms's case are virtually indistin-
guishable from Lam's. As in Lam, Toms's sentence was 
determined "solely on the basis of conduct of which he was 
actually convicted"--the conspiracy to distribute and possess 
with intent to distribute 50 grams or more of cocaine base. 
Moreover, Toms concedes that he was convicted of possession 
with intent to distribute of 67.8 grams (the amount retrieved 
from the Land Cruiser), a conviction that yields a base level 
of 32. The 2.8 kilogram amount found by the district judge 
yields a base level of 38--as in Lam, a six-level difference. 
Given the parallel between these two cases, we can see no 
reason to conclude that Toms's case, unlike Lam's, requires 
application of a clear and convincing evidence standard.

 Toms next argues that the district court's reliance on 
Thomas's testimony was reversible error. He contends that 
Thomas's estimate of the amount of cocaine base he had 
received from Toms was inconsistent with other portions of 
his testimony--for example, the amount of money Thomas 
stated that he, as a dealer, had made during the course of the 
conspiracy15--and that Thomas admitted on the stand that 
certain statements he had previously made to an undercover 
officer were untrue.16 Given these indicia of unreliability, 
Toms argues, the district court erred in using Thomas's 
testimony as the basis for determining Toms's sentence.

 We noted in Lam that in reviewing factual determinations 
supporting a Guidelines sentence, we give substantial defer-
ence to the findings of the district court. Lam, 966 F.2d at 

__________
 15 Thomas testified that he did not make more than $20,000 over 
the course of the conspiracy, see Tr. 1/13/95 at 174, although he 
later testified that he could not estimate the amount.

 16 Thomas admitted that he had previously lied to the officer 
about whether he had any drugs available for sale. See Tr. 1/13/95 
at 165.


688. We reverse the district court's conclusions "only if we 
are left with a definite and firm conviction that it is mistaken" 
and give full recognition to the fact that determining credibili-
ty and weighing evidence is a job for the factfinder, not for 
this court on review. Id. at 689 (internal quotes omitted). In 
light of these principles, we reject Toms's challenge. In its 
memorandum opinion denying Toms's motion, the district 
court found Thomas to be a credible witness for several 
reasons. First, the court noted that Thomas had told a 
cooperating witness and an undercover officer in mid-1993 
about the amount of drugs Toms could supply him for sale, a 
point in time before Thomas was himself charged with any 
crime and thus might have had a reason to shift the blame to 
another participant. Thomas's information proved to be accu-
rate when the witness and the undercover officer successfully 
purchased 84.58 grams of cocaine base from him. Second, 
the court noted that future attempts by the undercover 
officer to purchase drugs from Thomas after Toms was 
arrested were unsuccessful, further lending credibility to 
Thomas's testimony that Toms was his supplier. And finally, 
the court noted that additional evidence presented at trial, 
including a tally sheet found on Toms's person, bolstered 
Thomas's credibility as to the amount of drugs involved in the 
conspiracy. Toms, for his part, does not point to any evi-
dence in the record that directly contradicts Thomas's testi-
mony as to the amount of drugs involved; rather, he simply 
asserts that Thomas was not to be believed given the doubtful 
nature of some of his other testimony. Whether that testimo-
ny--or, indeed, any of Thomas's testimony--was open to 
question, however, is not for us to decide, given that Thomas's 
credibility can be assessed only by judging his demeanor on 
the witness stand. As we have already noted, such a determi-
nation in a sentencing proceeding properly belongs to the 
district court that participated in the trial, and we see no 
reason in this case to disturb its judgment.17

__________
 17 In fact, it is not inconceivable that, given the illegitimacy of the 
drug trade, Thomas would be unable to estimate the amount of 
money he had made from drug dealing; nor is it surprising that he 
would at times be reluctant to inform a potential customer and/or 


 III. Conclusion

 Because we reject Toms's challenges to the sufficiency of 
the evidence presented at trial, the expert testimony, and his 
sentence, we affirm his convictions and his sentence.

It is so ordered.

__________
rival of the extent of his supply. In any event, neither statement on 
its face provides sufficient reason to doubt the veracity of the 
remainder of Thomas's testimony.