UNITED STATES of America, Appellee,

v.

Charles Joseph LUCAS, Appellant.

Nos. 92–3146, 93–3200.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 15, 1995.

Decided Oct. 20, 1995.

Allen E. Burns, Assistant Federal Public Defender, argued the cause for appellant, with whom A.J. Kramer, Federal Public Defender, Washington, DC, was on the briefs.

E. Vaughn Dunnigan, Assistant United States Attorney, argued the cause for appellee, with whom Eric H. Holder, Jr., United States Attorney, and John R. Fisher, Assistant United States Attorney, Washington, DC, were on the brief for appellee. Elizabeth Trosman, Assistant United States Attorney, entered an appearance for appellee.

Before: EDWARDS, Chief Judge, and SENTELLE and TATEL, Circuit Judges.

HARRY T. EDWARDS, Chief Judge:

In late 1991, a team of police officers searched an apartment in Southeast Washington, D.C., and found drugs, drug paraphernalia, cash and a gun, concealed in a number of places, whereupon they arrested Alphonso Lucas ("Al") who was in the apartment at the time. Al's cousin, Charles Lucas, the appellant in this case, had rented the apartment in 1977. But appellant had moved out of the apartment in 1984, at which time he sublet the residence to Al. From 1984 until 1992 (when he was incarcerated), appellant lived with his wife in their home in Temple Hills, Maryland, and he worked as a correctional counselor in the D.C. Department of Corrections. There is no evidence that he had any regular connection with the apartment, other than occasionally collecting rent from Al. Indeed, he did not even retain a key to the apartment.

Even though appellant had vacated the apartment in 1984, had no ongoing contact there, and had no apparent connection to the drugs, paraphernalia, and cash found there, he was arrested and indicted for possession of marijuana, possession of heroin with intent to distribute, and knowingly and intentionally making the apartment available for drug trafficking. It is undisputed that appellant remained the nominal "tenant" of the apartment, but the Government offered no other meaningful evidence to connect him to the apartment or the activities therein. Rather, the Government attempted to prove appellant's knowledge of drugs and drug-dealing in the apartment through a single, ambiguously dated laundry receipt and some undated, randomly-discovered fingerprints. Despite the prosecution's lack of any meaningful evidence, the jury convicted appellant on all three counts.

In considering appellant's claim that the evidence was insufficient to support the verdict, we draw all inferences in favor of the Government. Even under this standard, however, we have no trouble concluding that the Government completely failed to prove that appellant had knowledge of the drugs at the apartment. No rational jury could find appellant guilty beyond a reasonable doubt. Accordingly, we reverse without reaching appellant's other claims of error, and we direct the District Court to enter a judgment of acquittal.

## I. BACKGROUND

The indictment, returned against Charles Lucas on December 19, 1991, charged appellant and his cousins, Al and Gregory Lucas ("Greg"), each with one count of possession with intent to distribute at least 100 grams of heroin, in violation of 21 U.S.C. § 841(a)(1) (1988) and 18 U.S.C. § 2 (1988), and one count of possession of marijuana, in violation of 21 U.S.C. § 844(a) (1988). The indictment also charged that appellant controlled the apartment and knowingly and intentionally made it available for the purpose of unlawfully manufacturing, storing, distributing, and using heroin, in violation of 21 U.S.C. § 856(a)(2) (1988).[1] Just before opening

---

1. 21 U.S.C. § 856(a) (1988) provides:
   Except as authorized by this subchapter, it shall be unlawful to—

   (1) knowingly open or maintain any place for the purpose of manufacturing, distributing, or using any controlled substance;

statements on March 9, 1992, Al Lucas pleaded guilty to the two drug possession counts. Appellant and Greg Lucas then proceeded to trial before a jury.

The Government presented little evidence linking appellant to the apartment in the months or even years before the raid. The Government did not dispute that appellant had moved out of the apartment in 1984, and had lived with his wife in Temple Hills, Maryland ever since. Appellant and his wife testified that he sublet the apartment informally to Al, because Al was "family" and could not rent an apartment himself due to his bad credit history. Al either paid directly or reimbursed appellant for paying the post–1984 rent and utility bills, which the Government introduced. The Government stipulated that Al forged appellant's signature on the money orders used to pay bills. The apartment manager explained the need for this arrangement by testifying that the landlord does not permit subletting and insists that checks or money orders used to pay rent bear the lessee's name.

In an attempt to show that appellant occasionally had entered the apartment after moving out, the Government introduced a laundry receipt found in a bedroom closet that bore the handwritten name "C. Lucas" and argued that it was dated "7/25/91." On cross-examination, the officer who presented the receipt conceded that he had no personal knowledge of its age, and that the year could have been "81," but opined that it looked more like "91." Neither this nor any other evidence contradicted appellant's testimony that he rarely visited the apartment and did not have a key. If he needed to pick up money for rent or bills from Al, appellant testified that he would usually call ahead and meet Al at the door or in the parking lot. Appellant said he would occasionally briefly enter the apartment to use the bathroom, but he never saw drugs or drug paraphernalia. Almost all the drugs and drug paraphernalia found by the police were hidden in a locked cabinet, in a safe in a closet, in a shoe box

under a bed, and in the pocket of a jacket in a closet. Only one small wax-paper packet of heroin was found unconcealed. So, even if appellant had occasionally entered the apartment between 1984 and 1991, there was nothing to suggest that he would have seen any drugs.

The Government introduced evidence to prove the presence of drugs and drug paraphernalia at the apartment. But the prosecutor could not connect them to appellant. Appellant's fingerprints were found on the shoe box, but the Government could not date the prints, and Al's and Greg's fingerprints were also on the box. Appellant explained that during a brief visit "quite a while" ago, he had seen the shoe box, opened it, and set it down after seeing only women's shoes in it. While no other drug-related evidence bore appellant's fingerprints, the locked cabinet bore the fingerprints of Al and Greg. The police also found a key in the apartment that later turned out to open a bank safe deposit box containing a large amount of cash. However, the evidence showed that appellant had never entered the safe deposit box, and was not among those authorized to open it.

The court denied appellant's motion for judgment of acquittal, but did acquit Greg. On March 12, 1992, the jury convicted appellant of all three counts. On May 12, 1992, the court sentenced appellant to two terms of 63 months and one term of 12 months of incarceration to run concurrently, to be followed by three consecutive terms of supervised release.

On January 7, 1993, appellant moved for a new trial. The District Court denied the motion on October 18, 1993. Under a practice adopted in *United States v. Cyrus*, 890 F.2d 1245, 1247 (D.C.Cir.1989), this appeal was deferred until resolution of post-conviction proceedings in the District Court. Unfortunately, this caused part of the three-and-a-half-year delay between appellant's conviction and argument on his appeal. Appellant has now served approximately 42

(2) manage or control any building, room, or enclosure, either as an owner, lessee, agent, employee, or mortgagee, and knowingly and intentionally rent, lease, or make available for use, with or without compensa-

tion, the building, room, or enclosure for the purpose of unlawfully manufacturing, storing, distributing, or using a controlled substance.

months of his 63–month sentence. We have recently adopted a new local rule decoupling direct criminal appeals from all postconviction proceedings. *See United States Court of Appeals, District of Columbia Circuit, Notice of New Practice Precluding Deferral of Direct Criminal Appeal Pending Postconviction Proceedings in District Court* (Sept. 26, 1995). In the future, absent extraordinary circumstances, direct criminal appeals will not be held in abeyance pending the District Court's disposition of post-conviction actions.[2]

## II. ANALYSIS

■■■ In assessing the sufficiency of the evidence, we do not lightly overturn a jury's determination of guilt. We review the evidence *de novo*, in a light most favorable to the Government, *United States v. Fennell*, 53 F.3d 1296, 1298 (D.C.Cir.1995), and we determine whether "*any*" rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). After careful consideration of the record in this case, we conclude that, even under this highly deferential standard, no rational jury could have found that the Government proved appellant's knowledge of the drugs or drug paraphernalia beyond a reasonable doubt.

■■■ The Government does not contend that appellant had actual possession of the marijuana or heroin. Therefore, we look for evidence of constructive possession, which "requires that the defendant knew of, and was in a position to exercise dominion and control over, the contraband." *United States v. Byfield*, 928 F.2d 1163, 1166 (D.C.Cir. 1991). "The essential question is whether there is 'some action, some word, or some conduct that links the individual to the narcotics and indicates that he had some stake in them, some power over them.'" *Id.* (quoting *United States v. Pardo*, 636 F.2d 535, 549 (D.C.Cir.1980)). The heroin possession count

also charged appellant with aiding and abetting in violation of 18 U.S.C. § 2 (1988). To prove aiding and abetting the Government must demonstrate "sufficient knowledge and participation to indicate that [the defendant] knowingly and wilfully participated in the offense in a manner that indicated he intended to make it succeed." *United States v. Raper*, 676 F.2d 841, 849 (D.C.Cir.1982). Therefore, if appellant did not know of the presence of drugs in the apartment, he cannot be guilty of possessing marijuana, or of possessing heroin with intent to distribute, either as a principal or as an accessory.

As to the third count, we must assess whether the Government has shown that appellant "knowingly and intentionally" made his apartment available for use "for the purpose of unlawfully manufacturing, storing, distributing, or using" the heroin. 21 U.S.C. § 856(a)(2) (1988). While a § 856(a)(2) conviction requires more elements than simple possession, or possession with intent to distribute, at a minimum, they all require proof of knowledge ·of the presence of drugs or drug-dealing in the apartment. Even viewed in a light most favorable to the Government, the evidence was insufficient to prove knowledge. Therefore, we need not consider the other elements.

At oral argument the Government conceded that the fingerprints on the shoe box were the *only* evidence tending to link appellant to the drugs and the drug paraphernalia. Indeed, of the various drug stashes, only the shoe box contained appellant's fingerprints. However, the box also contained fingerprints of Greg and Al. The Government could not date any of the prints and conceded that fingerprints remain on items for extended periods of time. The Government presented nothing to link appellant to the locked cabinet, the safe, or the bank safe deposit box, which together held most of the incriminating evidence. Neither could the Govern-

2. At the time of trial appellant was 48 years old, and had been employed as a correctional counselor for the D.C. Department of Corrections for the last eight years. Before that he had been a police officer, a railroad brakeman, and had been in the army. During trial, appellant attempted to present two character witnesses, but the court struck the testimony. At oral argument, the Government conceded that the District Court erred in excluding this testimony. However, because we reverse on other grounds, we need not decide whether the error was harmful. Nor do we address appellant's other claims.

ment link appellant to the six wax-paper packets of heroin found in a jacket in a closet or to the one packet of heroin found on the floor.

The evidence tended to show that Al had actual possession of the drugs in the apartment. Al was appellant's subtenant and cousin. The Government could show nothing more about their relationship. The jury had no evidence that appellant was particularly close to Al, saw him regularly, or was in a position to know that Al concealed drugs or drug paraphernalia at the apartment. The mere act of subletting the apartment to his cousin does not prove knowledge. If it did, anyone who rents an apartment to a relative could be liable for the tenant's misconduct.

In certain circumstances, juries may infer that a person exercises constructive possession over items found in his home. *United States v. Lindsey,* 47 F.3d 440, 445 (D.C.Cir.1995), *cert. granted and judgment vacated,* 1995 WL 276208 (U.S. Dec. 11, 1995) (No. 94–9127). However, it is undisputed that appellant moved out of the apartment about *seven years before* the police raid. Though appellant remained the tenant of record, his subtenant paid the rent and the utility bills. The fact that appellant left behind some personal papers and mementos dating from 1982 and earlier showed only that he lived in the apartment before 1984.

The Government's *sole* evidence that appellant may have entered the apartment anytime close to the November 20, 1991 raid was an ambiguously dated laundry receipt. Even assuming that the date was "7/25/91," the receipt would only permit the jury to conclude that appellant may have entered the apartment at some time in the four months before the raid. That does not prove that he knew about the concealed drugs and drug paraphernalia. The Government presented no evidence of how long the drugs and drug paraphernalia had been present in the apartment.

Overall, the evidence indicated that appellant had very little connection to the apartment: he moved out seven years ago, he did not have a key, he only occasionally met his cousin, he rarely entered the apart-

ment, and, when he did so, he stayed only briefly. No witness testified to having seen appellant in or near the apartment. While generally "[m]ere proximity to the drugs or association with others possessing drugs will not suffice" to prove constructive possession, *Byfield,* 928 F.2d at 1166, here the Government could not even prove appellant's proximity to the drugs and had no evidence that his association with Al was related to drugs. Therefore, we hold that evidence adduced at trial was insufficient to support the verdict as a matter of law. No rational jury could find beyond a reasonable doubt that appellant knew that drugs and drug paraphernalia were hidden in the apartment. The verdict was based on pure speculation, and it cannot stand. *United States v. Long,* 905 F.2d 1572, 1576 (D.C.Cir.) ("A jury is entitled to draw a vast range of reasonable inferences from evidence, but may not base a verdict on mere speculation."), *cert. denied,* 498 U.S. 948, 111 S.Ct. 365, 112 L.Ed.2d 328 (1990).

The courts of appeals have not been hesitant to reverse convictions where the evidence does not suffice to prove one or more of the elements of the alleged crime. In this case, knowledge is fundamental, because without knowledge there could be no criminal purpose or intent. Obviously, absence of proof of knowledge is fatal to the Government's case. For example, despite evidence stronger than present here, the court in *United States v. Onick,* 889 F.2d 1425, 1431 (5th Cir.1989) (as amended Feb. 6, 1990), reversed, *inter alia,* for insufficient evidence of knowledge of drugs, a § 856(a)(1) conviction of a defendant who was arrested at, but did not live in, an apartment containing drugs. *See also United States v. Zeigler,* 994 F.2d 845, 848 (D.C.Cir.1993) (The court reversed a conviction based on constructive possession of drugs for insufficient evidence of knowledge or control of drugs that were found in a locked briefcase in a locked laundry room of an apartment where defendant was frequently present.); *United States v. Clavis,* 956 F.2d 1079, 1093–94, (11th Cir.) (The court held that evidence that defendant had lived on the premises where drugs were found five days after his arrest, and that he had distributed cocaine elsewhere, was insufficient to support a § 856(a)(1) conviction

that requires proof that defendant knowingly maintained the premises for proscribed purposes.), *cert. denied,* 504 U.S. 990, 112 S.Ct. 2979, 119 L.Ed.2d 597 (1992); *United States v. Johnson,* 952 F.2d 1407, 1411–12 (D.C.Cir. 1992) (The court found insufficient evidence of constructive possession of drugs and reversed a conviction where the defendant was arrested in codefendant's apartment in which drugs and paraphernalia were in plain view, and defendant was found with $127 cash but no drugs on his person; the court held that the evidence failed to demonstrate a special relationship between defendant and codefendant, and that there was no basis for imputing to defendant any control over the drugs found in codefendant's apartment.).

Here, there can be no doubt that the evidence was insufficient to prove knowledge. Indeed, at oral argument, Government counsel could offer no plausible argument to connect appellant to drugs found at the apartment. Appellant, no less than Greg, should have received the benefit of a judgment of acquittal. Instead, he has spent almost four years in jail for crimes that the Government did not come close to proving.

### III. CONCLUSION

Appellant's convictions are hereby reversed because the evidence adduced at trial was insufficient to support the verdict as a matter of law. No rational jury could find beyond a reasonable doubt that appellant knew of the concealed drugs or drug paraphernalia. The District Court shall enter a judgment of acquittal forthwith, and appellant shall be promptly released without conditions. The mandate in this case shall be issued with the issuance of this opinion.

*So ordered.*