UNITED STATES of America,
Appellee,

v.

Andre P. CLARK, Appellant.

No. 97–3168.

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 13, 1998.

Decided Aug. 3, 1999.

James M. Johnstone, appointed by the court, argued the cause and filed the briefs for appellant.

Sharon A. Sprague, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were Wilma A. Lewis, U.S. Attorney, John R. Fisher and Thomas C. Black, Assistant U.S. Attorneys.

Before: SILBERMAN, ROGERS and GARLAND, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GARLAND.

GARLAND, *Circuit Judge*:

After a jury trial, defendant Andre Clark was found guilty of unlawful possession of a firearm by a convicted felon, unlawful possession of ammunition by a convicted felon, and attempted bribery of a government official. He was sentenced to 90 months in prison on each count, to run concurrently. He challenges his convictions on the following grounds: (1) that the evidence was insufficient to warrant conviction on any count; (2) that the district court abused its discretion and failed to protect him from undue prejudice by permitting the jury to learn of his prior conviction; and (3) that the district court committed a series of prejudicial trial errors. We reject all of these challenges. Clark also contends that he should only have been convicted once rather than twice for unlawfully possessing both a firearm and the ammunition with which it was loaded. The government does not contest this point, and we agree that defendant is correct. Accordingly, we remand for vacation of one of the two possession convictions, and otherwise affirm the district court's judgment in all respects.

## I

Early on the morning of December 11, 1996, police officers Otis McGinnis and Daymeion Harris stopped an automobile that was traveling over 40 miles per hour in a 25 miles per hour zone. Andre Clark was the driver and sole occupant of the car. Officer McGinnis approached the driver's side window, while Officer Harris went to the passenger's side. McGinnis asked Clark for his driver's license and car registration. Clark reached toward the back seat of the car and the back floorboard. Tr. 97–98. After feeling around on the back floorboard, he reached to the back seat and retrieved a document which he handed to the officer. Tr. 111–15. The document was a cellular phone contract in the name of Paul Green. When McGinnis realized what he had been given, he again asked for a license and registration. Tr. 98, 113–14. Clark returned the contract to the back seat, felt around again, and pulled out the same cellular contract. *Id.* Finally, Clark produced an expired learner's permit from New York which also bore the name Paul Green. Officer McGinnis asked whether defendant had his license, and when Clark said he did not, McGinnis asked him to step out of the car. Tr. 98–100, 116–17. After a radio check disclosed that defendant did not have a valid license, he was placed under arrest for driving without a permit.

Officer McGinnis then began to search the passenger compartment. The first place he looked was under the rear of the driver's seat, "because that's where I saw defendant reaching for his registration." Tr. 101. McGinnis found a loaded .45–caliber handgun on the floor to the rear of the seat, and immediately told his partner. Upon hearing this, Clark said to McGinnis: "I can call my girl right now and give you $5,000." Tr. 126; *see id.* at 102–04, 106–08, 140–41. As Officer Harris placed Clark in the squad car, Clark added: "Come on, man. I know what you all really want, I know what you all really want. You all could just go ahead and let me go. I know what you all really want." Tr 142, 167. Clark also told the officers his name was Paul Green. Tr. 142–43.

Clark was indicted on three counts: (1) unlawful possession of a firearm by a con-

victed felon in violation of 18 U.S.C. § 922(g)(1); (2) unlawful possession of ammunition by a convicted felon, also in violation of section 922(g)(1); and (3) attempted bribery of a government official in violation of 18 U.S.C. § 201(b)(1)(A), (C). At trial, the government offered the testimony of the two police officers as well as a stipulation, entered into by both sides, that Clark "had been previously convicted of a criminal offense punishable by a term of imprisonment exceeding one year." The nature of Clark's previous conviction was not mentioned. The defense called Keisha Harling, the mother of Clark's then-6-week-old child and the owner of the car Clark was driving at the time he was arrested. Harling testified that, unbeknownst to Clark, she had purchased the gun from a man in the neighborhood and had left it under the driver's seat several days prior to the arrest. The defense also called Kevia Williams, a longtime friend of Harling's, who testified that she saw Harling purchase the gun in November 1996 and place it under the driver's seat in early December. The jury convicted Clark on all three counts.

## II

Clark argues that the government lacked sufficient evidence to support the jury's verdict on either the possession or the bribery charges. We review such a challenge de novo, *United States v. Lucas,* 67 F.3d 956, 959 (D.C.Cir.1995), and must affirm the jury's verdict if " '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *Id.* (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)) (emphasis in original). In making that determination, "the prosecution's evidence is to be viewed in the light most favorable to the government, drawing no distinction between direct and circumstantial evidence, and giving full play to the right of the jury to determine credibility, weigh the evidence and draw justifiable inferences of fact." *United*

*States v. Foster,* 783 F.2d 1087, 1088 (D.C.Cir.1986) (internal citations and quotations omitted).

### A

Clark's felon-in-possession charges were based on the theory that he was in constructive possession of the weapon found under his seat. *See United States v. Morris,* 977 F.2d 617, 619–20 (D.C.Cir.1992). This "requires [evidence] that the defendant knew of, and was in a position to exercise dominion and control over" the weapon, but does not require that it be on his person. *United States v. Byfield,* 928 F.2d 1163, 1166 (D.C.Cir. 1991). Constructive possession may be inferred from circumstantial evidence, *see United States v. Raper,* 676 F.2d 841, 847–48 (D.C.Cir.1982), but neither knowledge nor proximity alone is sufficient to permit a jury to infer possession. *See, e.g., Morris,* 977 F.2d at 619–20. "There must be some action, some word, or some conduct that links the individual to the [contraband] and indicates that he had some stake in [it], some power over [it]." *United States v. Pardo,* 636 F.2d 535, 549 (D.C.Cir.1980).

Although the case for constructive possession is relatively close, contrary to Clark's characterization this is not simply a case in which the defendant was found in a car that happened to contain a gun. Nor does the fact that the officers never saw Clark look under the seat establish, as defendant claims, that he did not know it was there. Officer McGinnis testified that Clark felt around on the back floorboard behind his seat, that this made McGinnis suspicious enough to cause him to search that area first, and that when he did he immediately found the gun "where I saw him reaching." Tr. 101, 115. Clark's reaching actions are sufficient to link him to the gun and to indicate that "he had some stake" in it—and the fact that it was located directly under his seat further indicates that he had "some power over [it]." *Pardo,* 636 F.2d at 549. As we said in

*United States v. Hernandez* with respect to a very similar fact pattern: "[I]f proximity is coupled with a gesture toward the contraband, suggesting an ability to control the item in question, constructive possession may be inferred. An occupant of a car therefore need merely signify control of a particular space in the car to give rise to an inference of constructive possession of contraband later found in that space." 780 F.2d 113, 117 (D.C.Cir.1986) (internal citations omitted). Accordingly, in *Hernandez* we held there was sufficient evidence to sustain a jury verdict where the defendant "ben[t] over and ma[d]e a motion in front of his [car] seat," and the officer subsequently found a loaded weapon on the floorboard "where he had seen [defendant] bend down." 780 F.2d at 115. *See Morris,* 977 F.2d at 620 (holding that "proximity coupled with 'evidence of some other factor—including ... a gesture implying control ...' is enough to sustain a guilty verdict" for constructive possession) (quoting *United States v. Gibbs,* 904 F.2d 52, 56 (D.C.Cir.1990)); *see also Unites States v. (John) Richardson,* 161 F.3d 728, 732–33 (D.C.Cir.1998).

Based on this case law, the officers' testimony is sufficient to sustain a verdict on the prosecution's theory: that Clark's purported effort to reach behind his seat for his license and registration was only a ruse to permit him to push the gun farther out of the officers' view. This theory is further bolstered by the fact that, as he finally conceded to the officers, Clark had neither document. It is also supported by the fact that the location in which Clark ostensibly searched for the documents, the car's rear floorboard, would have been an unusual place to store them—even if he had had them.

It is true that there are some inconsistencies between McGinnis' testimony and that of his partner. McGinnis testified that Clark first reached to the floorboard, and then grabbed the cellular contract from the back seat. Tr. 98. Harris testified that the events occurred in the reverse order. Tr. 137–38. Both, however, were clear that Clark felt around on the floorboard behind the seat. Tr. 115, 138. A more important inconsistency arises from McGinnis' testimony that Clark ultimately found the expired learner's permit on the front seat, as compared to Harris' (somewhat unclear) testimony that it was on the rear floorboard. Tr. 98, 138. The significance of these inconsistencies, however, was for the jury to assess. Although a reasonable jury might have found the inconsistencies reason to doubt the officers' credibility, it might also have found them the product of honest differences in recollection, and proof that the officers did not conspire to create a consistent story. *See Gibbs,* 904 F.2d at 57 ("While a jury might have doubted this testimony regarding the defendant's alleged attempt to bend down and hide the drugs, ... the assertions and credibility of the witness describing an attempt to 'bend down as if doing something with their hands' were for the jury to consider."). Similarly, while crediting Harris' recollection might have given the jury an innocent explanation for why Clark was reaching to the rear floorboard, a reasonable jury might also have believed that McGinnis—who alone questioned Clark, stood right beside him, and had "a good focus on [him]," Tr. 110—had the better recollection. McGinnis' testimony was plainly "the more favorable to the government," and we are bound to view the prosecution's evidence in that light. *Foster,* 783 F.2d at 1088.

The prosecution's theory of the case is further supported by the testimony of both police officers that, when Clark heard McGinnis had found the gun, he immediately offered McGinnis a bribe. Like the fact that Clark gave the police the alias Paul Green, *see United States v. Glass,* 128 F.3d 1398, 1408 (10th Cir.1997), the bribery attempt is evidence of Clark's "consciousness of guilt" with respect to the gun offense, *see United States v. Mendez–Ortiz,* 810 F.2d 76, 79 (6th Cir.1986). It may be, as Clark's appellate counsel argues,

that a rational jury could have viewed the bribe as nothing more than an attempt to avoid an unfair conviction for possessing a gun of which he had no knowledge. But it was also justifiable for a jury to reach the prosecutor's conclusion, and we are required to give "full play to the right of the jury" to "draw justifiable inferences of fact." *Foster,* 783 F.2d at 1088. In any event, appellate counsel's argument was never made to the jury, since defendant's contention was that he never offered the bribe in the first place. *See* Tr. 295–96.

Finally, there was the testimony of Keisha Harling, the mother of Clark's child, and the partially corroborating testimony of Kevia Williams, Harling's longtime friend. Harling testified that she had purchased the gun, forgotten it under the driver's seat several days prior to the arrest, and never told Clark about it. Once again, the assessment of witness credibility is a job for the jury rather than this court. *See Foster,* 783 F.2d at 1088. And a reasonable juror could surely have discerned bias in these witnesses, or simply disbelieved their claim that Harling left a loaded gun (assertedly bought for her protection) unattended in a car for several days and never told Clark about it.

In sum, viewing the evidence in the light most favorable to the government, we conclude there was sufficient evidence to sustain Clark's conviction for constructive possession of the gun and its ammunition.

**B**

■ Clark also challenges the sufficiency of the evidence supporting his conviction for attempted bribery. Both McGinnis and Harris testified that Clark made the $5,000 offer to McGinnis as soon as he found the gun. Harris further testified that Clark made a similar offer to him as he placed Clark in the squad car. Clark did not testify himself, and there was no other contrary testimony. Nor does Clark contend that the offers were too ambiguous to constitute attempted bribes.

Clark does correctly note that the officers did not record the bribery attempt in their incident reports. He asks us to adopt a per se rule that no prosecution for attempted bribery can reach a jury when the only evidence is the testimony of police officers uncorroborated by contemporaneous reports. As counsel conceded at oral argument, however, there is no authority for such a rule. Although the officers' failure to record the incident may call the credibility of their testimony into question, that credibility is for the jury to assess. *See Foster,* 783 F.2d at 1088. Here, two officers testified to the bribe, while the discovery of the gun provided evidence of motive. Defendant was afforded a full opportunity to cross-examine the officers about their failure to report the offer. Under these circumstances, we cannot say that no reasonable juror could have found Clark guilty of attempted bribery.

**III**

An element of the offense of unlawful possession of a firearm by a convicted felon is that the defendant be previously convicted of "a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(g)(1). In this case, that element was proven by a stipulation that mirrored the words of the statute, with no mention made of the particular crime involved. Clark contends that the district court abused its discretion and failed to protect him from undue prejudice by permitting the jury to learn of the fact (although not the nature) of his prior conviction through the stipulation. Before trial, Clark moved to sever the felon-in-possession counts from the attempted bribery count, relying on *United States v. Dockery,* 955 F.2d 50 (D.C.Cir.1992), and FED. R.CRIM.P. 14 (court may order separate trials of counts if defendant is prejudiced by joinder). In the alternative, he moved for "bifurcation," which he described as "a split trial in which the jury would initially hear only the evidence bearing on the bribery attempt and the possession elements

of the gun charges. Only if and after the jury found these charges established would evidence of defendant's felon status be introduced." Def. Br. at 25. Clark also offered, as another alternative, to stipulate that he was a "prohibited person" under the unlawful possession statute.

In *Dockery,* we overturned a district court's decision not to sever a felon-in-possession count from others in the indictment. 955 F.2d at 53. In so doing, however, we noted that there is no "per se rule" requiring severance of a felon-in-possession charge from other counts. *Id.* Instead, we proceed on a case-by-case basis, requiring that " 'sufficiently scrupulous regard' ... be shown to protect the defendant from any undue prejudice resulting from joinder." *Id.* at 50 (quoting *United States v. Daniels,* 770 F.2d 1111, 1118 (D.C.Cir.1985)); *see United States v. Bowie,* 142 F.3d 1301, 1306 (D.C.Cir.1998); *United States v. (Opio) Moore,* 104 F.3d 377, 382 (D.C.Cir.1997). We review a district court's decision whether to sever a trial under FED.R.CRIM.P. 14 "only for abuse of discretion." *Bowie,* 142 F.3d at 1306; *see Dockery,* 955 F.2d at 54.

The most important difference between *Dockery* and this case is that in *Dockery* the evidence of the felon-in-possession count would have been inadmissible in a trial limited to the other counts. *See Dockery,* 955 F.2d at 50. Here, by contrast, Clark's violation of section 922(g)(1) (including, as discussed *infra,* its prior-felony element) was admissible as evidence of his motive for the attempted bribery—namely, to avoid arrest for that violation. *See* FED.R.EVID. 404(b) (other crimes admissible to show motive). And, as we noted above, the bribery was in turn admissible as evidence that Clark had knowledge of the gun. Hence, severance would have accomplished little in this case, since proof of each crime would have been admissible in the separate trials. *See United States v. (Corey) Moore,* 97 F.3d 561, 564 (D.C.Cir.1996) ("Joined offenses need not be severed ... if the evidence of each crime would be admissible in a separate trial for the other."). Perhaps for this reason, on appeal Clark does not assert that the failure to sever was itself an abuse of discretion under Rule 14. *See* Def. Br. at 24.

Of course, even where severance is not required, courts still must " 'proceed with caution' to avoid undue prejudice" to a defendant. *Dockery,* 955 F.2d at 53 (quoting *Daniels,* 770 F.2d at 1118). But in that respect, too, this case is different from *Dockery.* There, the government rejected defendant's offer of a stipulation, and insisted on proving the fact of defendant's prior conviction through the testimony of his probation officer. *Dockery,* 955 F.2d at 52, 54. There, too, the government repeatedly and unnecessarily referred to the defendant's prior conviction during the trial, a point we regarded as "[p]erhaps most significant[ ]" in assessing the prejudice involved. *Id.* at 56. In Clark's case, by contrast, the government proved the fact of the prior felony solely through the stipulation, and referred to it no more than was permissible to show the jury it had established an essential element of the offense.

There remains the question of whether it was an abuse of discretion to reject defendant's suggested alternatives of: (1) bifurcating the trial in a way that would delay the jury's hearing about his prior felony until after it found him guilty of possessing the gun; or (2) removing the issue from the trial altogether through a stipulation that Clark was a "prohibited person" who was not permitted to possess a weapon. In *Old Chief v. United States,* 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997), the Supreme Court found a district court had abused its discretion by refusing defendant's request to limit the evidence of the prior-conviction element of section 922(g)(1) to a stipulation that he had "been convicted of a crime punishable by imprisonment exceeding one (1) year." *Id.* at 174–75, 117 S.Ct. 644. Old Chief

had been charged with assault with a dangerous weapon, use of a firearm in a crime of violence, and being a felon-in-possession. The Court held that "whenever the official record offered by the government would be arresting enough to lure a juror into a sequence of bad character reasoning," evidence of the name or nature of a defendant's prior offense would be substantially more prejudicial than probative and hence barred under FED.R.EVID. 403. *Id.* at 185, 117 S.Ct. 644. "Where a prior conviction was for a gun crime or one similar to other charges in a pending case," as was Old Chief's prior conviction for assault, "the risk of unfair prejudice would be especially obvious." *Id.*

Needless to say, Clark's proposals for dealing with his prior conviction go beyond anything required by *Old Chief.* Indeed, in this case the trial court did exactly what *Old Chief* commanded: it accepted the defendant's stipulation and kept from the jury the name and nature of his prior offense. *Old Chief* did not, and does not, require more. The Court did not even mandate use of a stipulation for every prior offense, but only where "the prior conviction is for an offense likely to support conviction on some improper ground," *id.* at 191, 117 S.Ct. 644, such as "a gun crime or one similar to other charges in [the] pending case," *id.* at 185, 117 S.Ct. 644. Here, the nature of Clark's prior conviction was completely sanitized, and there was nothing about the stipulation that would "lure a jury into a sequence of bad character reasoning." *Id.*

Moreover, while the district court's approach in this case was not unduly prejudicial to defendant, defendant's alternatives might well have deprived the prosecution of its rightful opportunity, recognized in *Old Chief,* "to convince the jurors that a guilty verdict would be morally reasonable." *Id.* at 188, 117 S.Ct. 644. The effect of those alternatives would have been to keep from the jury the fact that the reason it was unlawful for Clark to possess a gun was that he was an ex-felon.

As we noted in *United States v. Mangum,* when a jury is not "told all the elements of the crime, it may, justifiably, question whether what the accused did was a crime. . . . Possession of a firearm by most people is not a crime. . . . Doubt as to the criminality of [the defendant's] conduct may influence the jury when it considers the possession element." 100 F.3d 164, 171 n. 11 (D.C.Cir.1996) (quoting *United States v. Collamore,* 868 F.2d 24, 28 (1st Cir.1989)). For that reason, we rejected defendant Mangum's contention that the district court should have "bifurcate[d] the ex-felon element and the other elements" of section 922(g)(1). *Id.* at 171. For the same reason, we reject Clark's suggestion that bifurcation was required here, as well as his alternative proposition that the court should simply have told the jury that he was a "prohibited person." As to the latter, we are doubtful that labeling defendant in that way would have materially reduced whatever prejudice he suffered from the stipulation; indeed, it seems equally possible that such a label would have generated even worse speculation as to the reason for the prohibition.

*United States v. Bowie,* provides further support for our conclusion. In *Bowie,* the defendant contended that the district court had abused its discretion by failing either to sever his felon-in-possession counts from the other charges, or to bifurcate the felon-in-possession counts so that the jury would decide only the element of possession. We rejected defendant's challenge, finding that the steps the court had taken to minimize prejudice resulting from mention of the prior conviction "demonstrated sufficiently scrupulous regard for [defendant's] right to a fair trial." *Bowie,* 142 F.3d at 1303. The district court had required the prosecution to prove the prior conviction by stipulation alone and without reference to the nature of the underlying crime; the stipulation had stated only that defendant "had previously been convicted of an offense punishable by a term of imprisonment exceeding one year"; and

the court had ensured that the only references made to the prior conviction were those necessary to explain the charge to the jury. *Id.* at 1304. In all these respects, Bowie's case is the same as Clark's.

■■■■■ The only additional step the trial court took in *Bowie*, but did not take here, was to admonish the jury not to consider the fact of the defendant's prior conviction for anything other than that element of the felon-in-possession counts. Although the absence of such an instruction is not unimportant, we note that Clark did not request one,[1] and that *Bowie* emphasized there is no "per se rule regarding what steps a district court must take to minimize the prejudice of other crimes evidence." *Bowie,* 142 F.3d at 1306 (citing *Daniels,* 770 F.2d at 1118). Indeed, more important than the absence of the instruction here is the presence of the factor mentioned at the start of this analysis— that in Clark's case, unlike Bowie's, proof of the felon-in-possession offenses would have been admissible even in a separate trial of the remaining offense. Accordingly, we reject the defendant's efforts to distinguish *Bowie,* and conclude that the district court did not abuse its discretion either by refusing to sever the section 922(g)(1) charges, or by permitting proof of Clark's prior conviction through the parties' stipulation.

## IV

Clark alleges that the district court committed a series of other trial errors that prejudiced his right to a fair trial. With one exception, which we discuss in Part V, these arguments are without merit and demand only brief attention to their core allegations.

■■■■■ First, citing *United States v. Donato,* 99 F.3d 426 (D.C.Cir.1996), Clark contends that the district court undermined his defense by directing unjustified criticism at his counsel in the presence of the jury. Although *Donato* did hold that criticism from the bench may be so hostile as to prejudice a defendant's right to a fair trial, *id.* at 435, 438, we also emphasized that

> a district judge has wide discretion in monitoring the flow of a criminal trial. It is well within her discretion to rebuke an attorney, sometimes harshly, when that attorney asks inappropriate questions, ignores the court's instructions, or otherwise engages in improper or delaying behavior. Sharp words spoken by a trial court to counsel do not by themselves establish impermissible bias.

*Id.* at 434.

■■■■■ In this case, a careful examination of the trial record has not given us any doubt that defendant received a fair trial. In most of the exchanges cited by Clark, the court correctly ruled that defense counsel had failed to properly frame his questions. Sometimes counsel's questions did not manifest their relevance; sometimes they were leading; and sometimes they suffered from a little of both. When the court sustained a relevance objection, counsel would often try to solve the problem by leading his witness into a show of relevance. This, in turn, would prompt the court to take counsel to task for both problems. *See, e.g.,* Tr. 200.

There is no indication that the court was any tougher on the defense counsel than on the prosecutor with respect to these matters of trial technique. *See, e.g., id.* at 99, 133–34, 139, 165–67, 217, 248. Moreover, the court took care to instruct the jury not to take its rulings on motions or objections by counsel as any indication of its opinion regarding the facts.[2] *See Unit-*

---

1. While the court does have "a continuing obligation to assure a fair trial," and "appropriate instructions are one way" to do so, "the trial court bears no burden to offer cautionary instructions *sua sponte* each time pri- or crimes evidence is introduced." *Dockery,* 955 F.2d at 56.

2. In its closing instructions, the court told the jury that "[m]y actions during the course of

ed States v. Logan, 998 F.2d 1025, 1029 (D.C.Cir.1993). Most important, the court's comments were directed at the attorneys, not at defendant or his witnesses. See Donato, 99 F.3d at 437–38; United States v. Edmond, 52 F.3d 1080, 1101–02 (D.C.Cir.1995). The jury heard nothing to suggest the court was biased against the defendant or disbelieved his defense.

Clark's second contention is that the district court erred when it ruled out testimony from Keisha Harling regarding a quarrel she and defendant had shortly before his arrest. We agree that the court erred in concluding such testimony would be irrelevant. While Clark urges the testimony's relevance on a number of grounds, the argument he stresses, and the one we find persuasive, is that "evidence of hostility between defendant and Ms. Harling was relevant to Ms. Harling's credibility by tending to counter any inference that she was testifying because of her friendship for defendant." Def. Br. at 29. Nonetheless, we find the error harmless in that it did not have a "substantial and injurious effect or influence in determining the jury's verdict." Kotteakos v. United States, 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946); see United States v. Smart, 98 F.3d 1379, 1390 (D.C.Cir.1996). Notwithstanding the court's ruling, Harling still managed to testify (on cross-examination) both that the quarrel took place and to the aspect of the quarrel most relevant to her credibility: the fact that Clark's relationship with her allegedly terminated the night of his arrest. Tr. 219 ("After we had an argument that night, it was over, he took my car, and that did it."); see also id. at 187. We do not see how the additional, comparatively insignificant details about the quarrel that were excluded could have had a substantial effect on the jury's assessment of Harling's credibility, let alone on the ultimate verdict.

Third, Clark contends that the court improperly admitted testimony regarding his use of the alias, Paul Green, and wrongly refused to strike references to the alias from the indictment. Defendant contends that because the alias was "irrelevant for any legitimate purpose," the testimony should have been excluded under FED. R. EVID. 401. Def. Br. at 31. But Clark's alias was not irrelevant. It is well-settled that "[a] defendant's use of an alias to conceal his identity from law enforcement officers is relevant as proof of consciousness of guilt." Glass, 128 F.3d at 1408; accord United States v. Levy, 865 F.2d 551, 558 (3d Cir.1989) (en banc); United States v. Kalish, 690 F.2d 1144, 1155 (5th Cir.1982); see United States v. Stewart, 104 F.3d 1377, 1391 (D.C.Cir. 1997) (holding that use of alias supported jury verdict that defendant knowingly failed to appear as required). Here, the fact that Clark gave the police an alias was relevant to the prosecution's charge that he knowingly possessed the gun found under his seat. Defendant further contends that the district court should have struck the references to his alias from the indictment under FED.R.CRIM.P. 7(d) because, although the government told the court they were necessary to show identity, in the end they were not. Even if that had been the government's sole ground for inclusion of the references in the indictment, Clark's claim would fail because he has not established any prejudice; the jury properly learned of defendant's use of the name Paul Green through the officer's testimony that defendant gave the name when arrested. See, e.g., United States v. Oakar, 111 F.3d 146, 157 (D.C.Cir.1997) ("Material that can fairly be described as 'surplus' may only be stricken [from an

---

this trial in ruling on motions or objections by counsel, any comments I may have made to counsel, any questions I may have put to witnesses … are not to be taken by you as any indication of my opinion as to how you should determine the issues of fact. If you believe that I have expressed or intimated any opinion as to the facts, not only should you disregard it, I instruct you to totally disregard it." Tr. 308.

indictment] if it is irrelevant and prejudicial.").

■ Fourth, Clark argues that he was prejudiced by the court's improper handling of the fact that a documentary about the jury process was broadcast on CBS television the night after the jury began its deliberations. The next day, defense counsel advised the court of the broadcast, asserted that "there was a definition of reasonable doubt given in that program which is inconsistent with the federal court definition," and requested that the court voir dire the jurors about the program. Tr. 356. The court declined to conduct a voir dire at that time. Instead, it instructed the jury to disregard anything they might have seen on the program, and then reinstructed them on the proper definition of reasonable doubt.[3] After the jury delivered its verdict, the court conducted a voir dire. Although several jurors had seen at least a part of the broadcast or heard it discussed, all assured the court to its satisfaction that the program had had no impact on their deliberations. Tr. 373–91.

We need not discuss this challenge in detail because defendant has failed, both in the district court and here, to satisfy the threshold requirement for such a claim of improper media exposure: that he show a "likelihood of prejudice." *United States v. Williams–Davis*, 90 F.3d 490, 501 (D.C.Cir.1996). Defense counsel told the district court that he had not himself seen the program, and had only heard about it from others. He did not (because he could not) tell the court what was said on the program concerning reasonable doubt, nor in what way it was "inconsistent" with the federal definition. Tr. 390–91. Despite the court's express invitation that he file a post-trial motion, defendant never submitted either a transcript or videotape of the broadcast. Nor has defendant's state of knowledge improved on appeal. On this record, therefore, we are unable to say either that there was anything prejudicial in the broadcast, or that the corrective measures taken by the trial court were inadequate.

■ Fifth, Clark argues that the district court "manipulated the jury selection process" by first seating those members of the venire who had been assigned even numbers by the Jury Office's computer, and thereafter seating odd-numbered members until the complete jury was chosen. Defendant contends that the court's procedure "infringed his constitutionally guaranteed rights to counsel, due process and equal protection,"[4] although he concedes there is no authority "approving or disapproving the trial judge's unusual practice." Def. Br. at 35 & n.16. We do not understand why the court adopted the selection procedure it did, but defendant has been unable to demonstrate how that procedure interfered with his constitutional rights. Although the procedure is unusual, it is not necessarily less random than alternating even- and odd-numbered jurors. Without any evidence to suggest there were relevant differences in the people assigned even and odd numbers, or that the court used the procedure as a mechanism for intentional discrimination, there is no basis for defendant's claim of a

---

3. The court said: "I'm informed by counsel that there may have been some television show last night on the question of reasonable doubt. If there were, and if you saw it … you must totally disregard it, because it has nothing whatever to do with this case. I am instructing you as to the law as it applies to this case, the case you heard. So, if any of you did happen to see any such program, please totally disregard it, because it has nothing to do with the law that you are to follow in this case." Tr. 358–59. The court then repeated the standard federal jury instruction regarding the meaning of "reasonable doubt." Tr. 359–60. *See Instruction* 2.09, Criminal Jury Instructions, Young Lawyers Section, The Bar Association of the District of Columbia (4th ed.1993).

4. Defendant does not challenge the procedure under the Jury Selection and Service Act, 28 U.S.C. § 1861, noting that his failure to raise the issue below renders such a challenge untimely under 28 U.S.C. § 1867(a). Def. Br. at 35 n.16.

constitutional violation. *See generally United States v. Ovalle,* 136 F.3d 1092, 1104–05 (6th Cir.1998).

## V

■ Clark's final argument is that he may not be convicted of more than one violation of section 922(g)(1) for possessing both a firearm and the ammunition it contained, an argument he raised in a pretrial motion to compel the government to elect between the two possession counts. Although the government did not respond to this argument on appeal, we note that it has conceded the point in at least three other cases. *See United States v. Pittman,* 172 F.3d 922 (D.C.Cir.1998) (table case), available at 1998 WL 939519, at *1; *United States v. (John) Richardson,* 161 F.3d 728, 730 n. 1 (D.C.Cir.1998); *United States v. Hall,* 77 F.3d 398, 402 (11th Cir.1996).

Because "[t]he legislature remains free under the Double Jeopardy Clause to define crimes and fix punishments," *Brown v. Ohio,* 432 U.S. 161, 165, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), the validity of Clark's claim turns on whether Congress intended the possession of a loaded firearm to constitute one or two "units of prosecution" under 18 U.S.C. § 922(g)(1). *See Bell v. United States,* 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955). Section 922(g)(1) states: "It shall be unlawful for any person who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year ... [to] possess in or affecting commerce, *any firearm or ammunition.*" 18 U.S.C. § 922(g)(1) (emphasis added). It would not be unreasonable to read the phrase "any firearm or ammunition" as permitting separate charges for each. Such a reading would be consistent with a congressional intent to permit greater punishment for more dangerous acts, the possession of a gun loaded with ammunition being more dangerous than the possession of either alone. On the other hand, an affirmative intention to permit two separate charges for a gun and its ammunition is not clear on the face of the statute. Indeed, if the statute were read that way, it might just as readily permit fourteen charges against Clark, one for the gun and one for each of its thirteen bullets.

■ In *Bell v. United States,* the Supreme Court instructed that "if Congress does not fix the punishment for a federal offense clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses." 349 U.S. at 84, 75 S.Ct. 620 (holding that interstate transportation of two women on same trip in same vehicle constitutes single violation of Mann Act, 18 U.S.C. § 2421); *see United States v. Anderson,* 59 F.3d 1323, 1333 (D.C.Cir.1995) (en banc). The question of whether section 922(g)(1) is ambiguous has already been decided in this circuit by *United States v. Cunningham,* 145 F.3d 1385 (D.C.Cir.1998), which considered the propriety of multiple section 922(g)(1) charges for the possession of multiple weapons. *Cunningham* concluded that the word "any" in the phrase "any firearm or ammunition" creates ambiguity as to the unit of prosecution intended by Congress, and that as a consequence, "[w]hen a felon possesses multiple weapons, only one offense is committed, unless the weapons are stored or acquired at different times or places." *Id.* at 1398.[5] Because the phrase is no less ambiguous for charges based on weapons and ammunition than for charges based on multiple weapons, *Cunningham* compels the conclusion that possession of a loaded weapon constitutes a single offense as well. In so holding, we join every other circuit that has considered the issue.[6]

---

**5.** *Accord United States v. Szalkiewicz,* 944 F.2d 653, 654 (9th Cir.1991); *United States v. Valentine,* 706 F.2d 282, 294 (10th Cir.1983); *United States v. Frankenberry,* 696 F.2d 239, 244 (3d Cir.1982); *United States v. Powers,* 572 F.2d 146, 150 (8th Cir.1978).

**6.** *See United States v. Dunford,* 148 F.3d 385, 390 (4th Cir.1998); *United States v. Keen,* 104

872

Upon finding that a defendant has been convicted of two charges for a single offense, the usual remedy is to hold that the convictions have merged and order that one be vacated. *Ball v. United States,* 470 U.S. 856, 864, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985); *see Cunningham,* 145 F.3d at 1399; *United States v. (Billy) Richardson,* 167 F.3d 621, 628 (D.C.Cir. 1999). Clark, however, contends that it was "possibly prejudicial" for the court to have "allow[ed] the government to charge and try both offenses," and implies that we should therefore vacate both. Def. Br. at 32 n.13. We detect no prejudice, since the evidence that Clark possessed the gun and that he possessed the ammunition was identical, and since the jury would have learned of both regardless which separate charge was brought. Accordingly, the only remedy that is necessary is to "vacate one of the underlying convictions." *Ball,* 470 U.S. at 864, 105 S.Ct. 1668; *see id.* at 859–60 & n. 8, 105 S.Ct. 1668; *United States v. Berry,* 977 F.2d 915, 920 (5th Cir.1992).

## VI

The judgment of the district court is affirmed with the exception of defendant's separate convictions for unlawfully possessing both a gun and the ammunition with which it was loaded. As to those, the case is remanded with instructions that the district court vacate one of the convictions and resentence the defendant.

F.3d 1111, 1119–20 (9th Cir.1996); *United States v. Hall,* 77 F.3d 398, 402 (11th Cir. 1996); *United States v. Berry,* 977 F.2d 915, 919–20 (5th Cir.1992); *United States v.* *Throneburg,* 921 F.2d 654, 657 (6th Cir.1990); *United States v. Pelusio,* 725 F.2d 161, 168–69 (2d Cir.1983); *United States v. Oliver,* 683 F.2d 224, 232–33 (7th Cir.1982).