United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

**No. 19-3088**

**September Term, 2020**

FILED ON: FEBRUARY 26, 2021

UNITED STATES OF AMERICA,
                    APPELLEE

v.

GREGORY C. COOK,
                    APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:17-cr-00128-1)

Before: TATEL, GARLAND* and WILKINS, *Circuit Judges*.

**J U D G M E N T**

This case was considered on the record from the United States District Court for the District of Columbia, and on the briefs and oral arguments of the parties. The Court has afforded the issues full consideration and has determined they do not warrant a published opinion. *See* Fed. R. App. P. 36; D.C. Cir. R. 36(d).

It is **ORDERED and ADJUDGED** that the judgment of the District Court be **AFFIRMED**.

**I.**

Appellant Gregory Cook challenges the sufficiency of the evidence for his convictions of conspiracy to distribute narcotics and for possession with intent to distribute cocaine, heroin, and 28 grams or more of cocaine base. Taken in the light most favorable to the government, the evidence at trial can be summarized as follows.

On June 7, 2017, Cook was arrested along with Cornelia Rice. Based on information from a confidential informant, police officers suspected Rice was a drug dealer. Through this confidential informant, the police organized a drug purchase for half an ounce of crack cocaine worth about $1,200 from Rice. Five officers followed Rice as she picked up her eleven-year-old

---

* Judge Garland was a member of the panel at the time this case was submitted but did not participate in the final disposition of the case.

son and took him to her apartment building. About 30 minutes later, Rice left the apartment, and several of the officers followed her assuming that she was on her way to the pre-arranged location for the drug deal. Other officers remained at the building and went up to her apartment, where they heard a child and an adult male playing video games through the door. They then returned to their vehicle to observe the building.

Soon after, police officers stopped Rice's car. The police officers asked Rice whether they could search her vehicle, and she consented. At one point during the officers' search, Rice asked a passerby, Paulette White, to call her mother, and she gave White two numbers to call. White made two calls: the first to Rice's home number at 7:21 p.m. and the second to Appellant's phone number at 7:22 p.m. White testified that it was a woman who answered the first phone call, but the woman told White that she did not know Rice. A man identifying himself as Mike answered the second phone call, and he told White he was coming when she told him that Rice had been stopped by the police. Shortly thereafter, officers found heroin in Rice's right hand. After arresting her and taking her to the police station, officers found 14 grams of crack cocaine in her bra.

Meanwhile, Appellant emerged from Rice's building. He looked around, got startled when seeing the officers, stared at them, and then went back inside, where he checked whether the door to the building was secure. Soon after, Rice's son left the building with a backpack. Officers entered the building and encountered Appellant in the hallway outside Rice's apartment. Officers described Appellant as nervous. Appellant told the officers that he was visiting Rice. Appellant also gave the officers his home address in Waldorf, Maryland.

The officers then entered and searched Rice's apartment, a two-bedroom unit, pursuant to a search warrant. After searching the apartment for over an hour, the officers found 29.5 grams of cocaine. They also found items commonly used to manufacture narcotics with drug residue on them underneath the bed and inside the nightstand. Officers also found Appellant's Wells Fargo debit card on the nightstand, a prescription bottle in Appellant's name, and hair clippers.

Concurrently, other officers stopped Rice's son after watching him walk listlessly in the street, and they inspected his backpack. After feeling a hard object consistent with a firearm, the officers searched the backpack and found a small handgun, a plastic bag containing two bullets, over $11,000 in cash, 34 grams of cocaine base, 240.2 grams of cocaine hydrochloride, 6.15 grams of heroin, a heroin cutting agent, and men's clothing.

Appellant and Rice were arrested. Appellant was charged with seven counts: (Count 1) conspiracy to distribute and possess with intent to distribute cocaine, heroin, and over 28 grams of cocaine base under 21 U.S.C. § 846; (Counts 2–4) three counts of possession with intent to distribute; (Count 5) using or carrying a firearm during a drug trafficking offense; (Count 6) unlawful possession of a firearm by a felon; and (Count 7) unlawful use of a minor in drug operations.

A few days later, Rice was released, and Appellant called Rice from the jail on a recorded line. During the call, Appellant suggested that Rice was set up by Cuzzo, whom she was going to meet for the drug sale. When Rice expressed disbelief, Appellant reminded her that Cuzzo was the one who called her for the sale, that Cuzzo knew she had contraband on her, and that she was going to meet Cuzzo for the sale. Appellant then asked to speak to "little brother," and he told

him to "move them things."

A week after Appellant's arrest, police officers searched Appellant's home in Waldorf, Maryland, again pursuant to a warrant. The house was sparsely furnished, and only one of the two bedrooms had a bed in it. In the house, officers found a trash bag in a basement closet containing a commercial-grade money counter, three Pyrex dishes with drug residue, and Rice's ID. Officers also found digital scales with cocaine residue on them, as well as high-end jewelry in the house.

The police also reviewed both Appellant's and Rice's bank accounts. The bank records connected to Appellant's Wells Fargo card found in Rice's apartment revealed regular cash deposits at the ATM located near Rice's home beginning in December 2016. The account also did not have any source of incoming funds besides the cash. On the other hand, Rice's bank records revealed no large cash deposits during this time period, and most deposits into her account came from her employer.

Appellant proceeded to trial, while Rice pleaded guilty and was sentenced to five years' incarceration. Rice testified on behalf of the defense during Appellant's trial. Rice testified that she was in a relationship with Appellant but that Appellant rarely stayed overnight at her place. Rice claimed that Appellant had not stayed overnight at her apartment during the month prior to her arrest. She also testified that Appellant knew about her drug activity, but that he had nothing to do with it. Rice claimed that Appellant was a barber and was paid for haircuts in cash, which she claimed explained his cash deposits and why police found clippers in her apartment. Rice also testified that she stored her contraband in her son's backpack, and that she had taught him to hide the backpack if she got in trouble. Rice also testified that when her first call failed, she asked White to call Appellant to check in on Rice's son. Rice also claimed that Appellant's brother resided in the Waldorf house, and she had asked the brother to move the trash bag (which she claimed police had missed during their search of her apartment) from her apartment to the Waldorf house after her arrest. Rice, however, faced heavy impeachment, particularly with regards to her changing story about her son's backpack. When she pleaded guilty, Rice had testified that her son had merely picked up the wrong backpack—not that she had taught him to take it in case she was arrested.

Appellant moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, but the District Court denied the motion. The District Court found that (1) it was a logical inference that Rice was alerting Appellant that the police could be pursuing him and that he should prepare Rice's son's backpack, (2) Appellant's constructive possession of the contraband in Rice's son's backpack would make him guilty of possession and conspiracy, and (3) the contraband found in Rice's apartment and Appellant's Waldorf house permitted a reasonable inference of conspiracy. Subsequently, the jury found Appellant guilty of conspiracy and each of the possession with intent to distribute counts, but it hung on the remaining charges. The District Court sentenced Appellant to 90 months' incarceration and four years' supervised release.

On appeal, Appellant argues that the government presented insufficient evidence to sustain the jury's guilty verdict as to both the conspiracy charge and the substantive drug charges. Because we find that there was sufficient evidence to allow a reasonable jury to find that Appellant entered into a conspiracy with Rice, we affirm the jury's verdict on that count. Since the District

Court properly gave the jury a *Pinkerton* instruction, we also affirm the jury's guilty verdict as to the substantive drug charges.

## II.

When we review a guilty verdict, "[w]e owe 'tremendous deference' to the jury's verdict," and we must uphold a conviction "'if *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Bowser*, 964 F.3d 26, 34 (D.C. Cir. 2020) (quoting *United States v. Long*, 905 F.2d 1572, 1576 (D.C. Cir. 1990); *United States v. Wahl*, 290 F.3d 370, 375 (D.C. Cir. 2002)). Consequently, this Court "reviews the sufficiency of the evidence *de novo*, viewing the facts in the light most favorable to the government." *United States v. Young*, 107 F.3d 903, 907 (D.C. Cir. 1997). In determining whether the evidence is sufficient, we review "the prosecution's evidence . . . in the light most favorable to the government, drawing no distinction between direct and circumstantial evidence, and giving full play to the right of the jury to determine credibility, weigh the evidence and draw justifiable inferences of fact." *United States v. Clark*, 184 F.3d 858, 863 (D.C. Cir. 1999) (quoting *United States v. Foster*, 783 F.2d 1087, 1088 (D.C. Cir. 1986)).

To establish a conspiracy to distribute narcotics under 21 U.S.C. § 846, the government has to prove (1) that Appellant knowingly entered into the conspiracy and (2) that Appellant "had the 'specific intent to further the conspiracy's objective.'" *United States v. Gaskins*, 690 F.3d 569, 577 (D.C. Cir. 2012) (quoting *United States v. Childress*, 58 F.3d 693, 708 (D.C. Cir. 1995)). The government need not prove any overt act; it must only prove that Appellant entered into an agreement to distribute narcotics. *United States v. Law*, 528 F.3d 888, 907 (D.C. Cir. 2008). Moreover, the government does not have to establish that Appellant was personally involved in any narcotics sales. The government can instead prove Appellant's facilitation of the conspiracy through the handling of the illicit proceeds of the narcotics distribution. *See United States v. Tarantino*, 846 F.2d 1384, 1396–97 (D.C. Cir. 1988).

Given the tremendous deference we afford to jury verdicts, we conclude that there was sufficient evidence to permit the jury to reasonably conclude that Appellant was in a conspiracy with Rice. First, based on the jailhouse call, the jury could have reasonably inferred that Appellant had specific knowledge of Rice's drug trafficking. Rice testified that she was on her way to sell drugs to Cuzzo when the police stopped her. The jury could have concluded from the jailhouse call that Appellant not only knew that Rice was meeting Cuzzo for the deal, but that he also knew Cuzzo's identity and Rice's history of communication with Cuzzo. Second, the jury could have reasonably inferred that the commercial-grade money counter and the drug distribution equipment found in the Waldorf house belonged to Appellant and were used for the conspiracy because he owned the Waldorf house, identified it as his home address to the police, and the house only had one bed. *See United States v. Jenkins*, 928 F.2d 1175, 1179 (D.C. Cir. 1991). Third, the government also presented evidence that cash deposits were regularly made into Appellant's bank account at an ATM near Rice's home, whereas Rice made no cash deposits into her account. From this, the jury could have inferred that Appellant was funneling proceeds from the conspiracy into his account. Finally, based on the above evidence, it was also reasonable for the jury to conclude that on June 7, after Appellant received the call from Rice, he scoped the block and

directed Rice's son to leave with the contraband in an effort to conceal the conspiracy.

Appellant's knowledge of Rice's drug trafficking activities, when viewed in the light most favorable to the government and considered in conjunction with Appellant's cash deposits, the jewelry, the commercial-grade money counter, and the drug distribution equipment found in his Waldorf house, as well as his actions on the evening of June 7, allowed the jury to reasonably infer that Appellant was assisting with, handling, and spending cash knowingly derived from Rice's drug sales. It was also well within the jury's discretion to discredit Rice's exculpatory testimony, particularly in light of the heavy impeachment she faced. *See Clark*, 184 F.3d at 865. Therefore, we affirm the jury's finding that Appellant was in a conspiracy to distribute narcotics with Rice.

Because we affirm the jury's guilty verdict as to the conspiracy charge, we also affirm the jury's verdict as to the substantive drug charges. *See* 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(iii), (b)(1)(C). Under the *Pinkerton* doctrine, Appellant can be held liable for his co-conspirators' acts when the acts are taken "in furtherance of the conspiracy" and were "reasonably foresee[able]" to Appellant. *Pinkerton v. United States*, 328 U.S. 640, 647–48 (1946); *see also United States v. McGill*, 815 F.3d 846, 917 (D.C. Cir. 2016). The jury was instructed on the *Pinkerton* theory. And it was reasonable for the jury to infer that the drugs found by the police were to be sold in furtherance of the conspiracy and that this was reasonably foreseeable to Appellant. We therefore affirm Appellant's substantive drug convictions.

Consistent with the foregoing, we affirm the judgment of the District Court.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or petition for rehearing en banc. *See* Fed. R. App. P. 41(b); D.C. Cir. Rule 41.

**<u>Per Curiam</u>**

FOR THE COURT:
Mark J. Langer, Clerk

BY:    /s/
Daniel J. Reidy
Deputy Clerk

5